**STATE of Missouri,
Plaintiff-Respondent,**

v.

**Gary J. HIRES, Defendant-Appellant.**

**No. KCD 29958.**

Missouri Court of Appeals,
Western District.

April 30, 1979.

Motion for Rehearing and/or Transfer to
Supreme Court Denied June 11, 1979.

Bruce W. Simon, Kansas City, for defendant-appellant.

John Ashcroft, Atty. Gen., Paul R. Otto, Asst. Atty. Gen., Jefferson City, for plaintiff-respondent.

Before DIXON, P. J., and TURNAGE and KENNEDY, JJ.

KENNEDY, Judge.

A jury found the defendant Gary Hires guilty of one count of rape and each of two counts of sodomy. Under the Second Offender Act, § 556.280, RSMo.1969, defendant was sentenced to ten years' imprisonment on each count, to be served concurrently. From the ensuing judgment and sentence he has appealed to this court. Finding no prejudicial error, we affirm.

On November 27, 1976, Janet was waiting for a bus at a bus stop at 43rd and Main in Kansas City, Missouri. It was between 4:30 and 5:00 o'clock p. m. and she had finished her day's work at St. Luke's Hospital. It was quite cold. The defendant, a stranger to her, stopped his van and offered her a ride. Her destination was a cocktail lounge at 85th and Wornall. Defendant said he was going farther south than that, and she foolishly accepted a ride with him.

Upon arriving at the cocktail lounge, defendant, with Janet's permission went in with her and joined her and some other of her friends and acquaintances for drinks. Janet's boy friend, whom she had planned to meet, did not show up as expected. By about 7:00 o'clock the other friends had left the lounge. Defendant offered to take her home, and she accepted. Instead of going to her home, however, defendant—missing the right exit and becoming lost, perhaps as a pretext—drove around in areas unfamiliar to her. Before taking her home, he stopped the van, forcibly raped her and committed the other acts of which he was convicted.

Defendant then drove Janet to her home. As he slowed down near her house she

jumped out of the van and ran into the house. The time was now after 9:00 o'clock.

Other facts will emerge as the opinion proceeds.

We will consider in order the appellant's points of error:

*In which the court sustained an objection to a cross-examination question to the complaining witness "how long (she) had been away from home?"* Defense counsel on cross-examination asked Janet how long she had been away from home. Upon objection by the state, the defense attorney explained to the court that his purpose in asking the question was "to test credibility". The court thereupon sustained the objection, a ruling claimed to have been prejudicial error. (As to her background, defendant had elicited without objection that she had lived with Shannon, her boy friend, three or four months; that she had worked at St. Luke's Hospital about eight months; and that before St. Luke's she had worked at a retail pharmacy.)

■ It is often said that the extent of cross-examination is discretionary with the trial court. *State v. Johnson*, 486 S.W.2d 491, 496 (Mo.1972). In the case of cross-examination of a prosecuting witness, as was Janet, doubts should be resolved on the side of liberality in allowing cross-examination. *State v. Hunter*, 544 S.W.2d 58 (Mo.App. 1976). Even so, fishing expeditions by counsel in collateral matters must have an end, and it must be left up to the trial court when a particular line of inquiry may or may not be pursued further. Here, the trial court asked counsel "where he was going" with this line of questioning. Had counsel suggested some specific destination to which the inquiry would lead, which would have been relevant to some issue in the case, or which would have had some impeachment value, then the court would doubtless have permitted the question. *State v. Bobbitt*, 242 Mo. 273, 146 S.W. 799, 804–805 (1912)[1]. But counsel said only that

the question was put to the witness as a test of credibility. The trial court could make no connection between any possible answer to counsel's question and the credibility of the witness. Neither can we.

■ Appellant says in his brief here that this testimony would have countered the testimony of witness Shannon that Janet was a "trusting" type of person. (This had been allowed to be shown as an explanation for her imprudent acceptance of defendant's proffered ride.) But defendant did not suggest that purpose to the trial court, and he cannot be heard in this court to justify it on that ground. *State v. Callahan*, 526 S.W.2d 59, 61 (Mo.App.1975). If there is any connection between the time the witness left home (presumably her parents' home is meant, although that is not entirely clear), and the question of her disposition to be trusting, that connection is exceedingly remote and tenuous. The extent of exploration of such peripheral subissues must be left to the trial court's discretion. *State v. Messley*, 366 S.W.2d 390, 393 (Mo.1963). In this instance, we have no criticism of the ruling of which the appellant complains.

■ *In which the court denied a requested mistrial when witness Shannon said, as he explained his plan for private revenge for the rape, "Criminals get to go free . . . ."* Witness Thomas Shannon was Janet's "boy friend" with whom she had been living for a time variously estimated from one to four months. After Janet had come home and had reported the incident to him, they had driven around and had located the van at 8005 Brooklyn. Shannon had then taken Janet home and had returned to that address on a reconnaissance visit. When asked what he did then, his answer was: "I went back to my house. I got a—went down and asked a couple friends if they would help me, talked to them about it a little bit, about what had happened that night. A couple—all three of the people

---

1. It has been suggested that, on collateral matters, an offer of proof is required even on cross-examination in order to preserve for review any error in sustaining the objection to a question. *State v. Callahan*, 526 S.W.2d 59, 61 (Mo.App.1975). *Cf. State v. Bobbitt, supra.*

had been at the bar with her that evening, or the lounge or what have you, and I said, 'What did this guy look like' and so forth, trying to—just to try to piece something together. I'm not sure exactly what all I asked. I was just trying to piece something together. And I said, 'Well, you know, I would like'—at the time all I wanted to do was just, you know, get back over there and take care of him, because there was nothing else that gets in the way, that's all you think about, because, you know, you hear stories and, you know, on TV and things, you know, everybody just gets, you know, criminals get to go free or what have you —"

Defendant's objection at this point was sustained and the jury was instructed by the court to disregard "the last comment" of the witness. A requested mistrial was denied, however, and the defendant claims that this ruling was erroneous.

Mistrial, a radical measure, is within the trial court's discretion to declare or refuse. Here the court considered that the slight prejudicial effect of the witness' statement, if indeed error, could be obviated by an admonition to the jury to disregard the statement, and that the radical measure of mistrial was not indicated. Finding no abuse of discretion, we defer to the trial court's disposition of the matter. *State v. Raspberry*, 452 S.W.2d 169, 173 (Mo.1970); *State v. Miles*, 364 S.W.2d 532, 536 (Mo. 1963); *State v. Hunt*, 570 S.W.2d 777, 782 (Mo.App.1978).

*In which the court sustained an objection to defendant's question to Detective Whitaker about the complaining witness's omission of an incident from her account of the evening's events.* During the course of defendant's and Janet's driving around (after leaving the cocktail lounge, Pandora's Box, and before the rape), they had stopped at a Seven-Eleven store where Janet had used the rest room. In a written statement given by Janet to Detective Whitaker in reporting the rape, this stop was omitted. Janet had not admitted unequivocally on cross-examination she had omitted the incident. She said, when confronted with the

omission: " . . . I mentioned it to Jaylynn at the beginning, and I thought I had mentioned it to Gibson. I had been up 48 hours practically by the time this was all completed. I really don't remember . . I don't remember [if I mentioned it to Detective Whitaker]. Detective Whitaker was stating it—was making the statement from the report I gave to Gibson. I wasn't really even speaking to Whitaker at the time the statement was typed."

On cross-examination of Whitaker, defense counsel asked if Janet had mentioned the stop at the convenience store when he was interviewing her. An objection was sustained, on the ground that Janet had admitted the omission, and that defendant was therefore foreclosed from showing it by rebuttal evidence. This ruling by the court is said to have been prejudicially erroneous.

■ As we have seen, Janet had not unequivocally admitted that she had omitted the convenience store stop from her account. In such a case, the defendant would have had the right to introduce evidence of the prior inconsistent statement if it had related to a matter of some consequence. It is not error to reject proof of a prior inconsistent statement if it relates to an immaterial or collateral matter. *State v. Alexander*, 499 S.W.2d 439, 443 (Mo. 1973); *State v. Ball*, 529 S.W.2d 901, 907 (Mo.App.1975).

■ The stop at the convenience store during the course of the ride was not a contested matter, and sheds light on no contested matter. Defendant introduced evidence by an employee of the store that defendant and Janet were on friendly terms at that point, presumably for circumstantial support of a defense of Janet's consent. But Janet's own testimony was that she and defendant were on friendly terms up to the time the van was stopped later in the evening and the attack occurred. At the time of the convenience store stop she was a willing passenger in defendant's van. If she failed to tell the officers about this rest room stop as she reported the evening's events, it is a matter of small importance. Its omission subtracted nothing significant

from the account; its inclusion would have added nothing significant. (It would have been otherwise if, for instance, she had claimed to have been defendant's captive.) The court did not err in sustaining the objection.

■ *In which the sufficiency of the evidence is challenged for want of corroboration of the prosecuting witness's testimony.* One point of error remains: Defendant claims the evidence is insufficient to support the verdict of conviction. He points to the case of *State v. Bursley,* 548 S.W.2d 586, 588 (Mo.App.1976), which applies the rule that "in rape and sodomy prosecutions . . corroborating evidence must be adduced when the complaining witness's testimony is contradictory or unconvincing". The rule is not applicable here, for Janet's testimony was internally consistent, not self-contradictory, and not implausible. The rule in such cases is that no corroboration is required—although actually we find some corroboration in Janet's appearance and demeanor on her arrival home and later, the condition of her clothing, and the presence of bruises on her lips, breast and abdomen. *State v. McElroy,* 518 S.W.2d 459, 462 (Mo.App. 1975); *State v. Neal,* 484 S.W.2d 270, 272 (Mo.1972); *see also State v. Burton,* 355 Mo. 467, 196 S.W.2d 621, 623 (1946). In such a case, we make no further inquiry into the *weight* of the evidence, which is for the jury and, upon motion for new trial, for the trial court. We ask only whether there was substantial evidence to support the verdict of guilty. *State v. Ruth,* 567 S.W.2d 716 (Mo.App.1978). The evidence noted in this opinion is sufficient for that purpose.

The judgment is affirmed.

All concur.