**STATE of Missouri, Respondent,**

v.

**Karen Ray WESTCOTT, Appellant.**

**Karen Ray WESTCOTT, Appellant,**

v.

**STATE of Missouri, Respondent.**

**Nos. WD 43284, WD 45495.**

Missouri Court of Appeals,
Western District.

May 25, 1993.

Motion for Rehearing and/or Transfer to Supreme Court Denied June 29, 1993.

Application to Transfer Denied
Aug. 17, 1993.

---

Susan L. Hogan, Asst. Atty. Gen., Kansas City, for appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Breck K. Burgess, Asst. Atty. Gen., Jefferson City, for respondent.

Before KENNEDY, P.J. and BERREY and SPINDEN, JJ.

SPINDEN, Judge.

Karen Ray Westcott appeals his jury conviction of sexual abuse and sexual assault of his wife's teenaged daughter. He appeals the trial court's denial of a motion for a new trial and the hearing court's overruling of his 29.15 motion for post-conviction relief when he was not given the opportunity to testify; he appeals the denial of his motion for judgement of acquittal at the close of all the evidence because, he asserts, the state presented insufficient evidence to sustain the verdict; and he appeals the denial of his motion for post-conviction relief where he alleges he was denied effective assistance of counsel and due process.

A jury convicted Westcott of three counts of sexual abuse in the first degree, § 566.100,[1] two counts of deviate sexual assault in the first degree, § 566.070, one count of sexual assault in the first degree, § 566.040, and two counts of sexual assault in the second degree, § 566.110. We affirm.

The incidents giving rise to the charge occurred during 1989 when Westcott lived with his wife, Maria, and their three children and two of Maria's teenaged daughters. The state presented evidence that one evening, while Maria was at work, Westcott rubbed the chest of one of Maria's daughters, put his hand inside her shorts and put a finger in her "private part" between her legs. Sometime later, Westcott twice got into the girl's bed, fondled her breasts, moved his hand between her legs and put a finger in her "private part." Once Westcott put his penis in the

girl's "private place." Maria's other teenaged daughter testified that Westcott had fondled her breasts on two different nights.

Westcott presented testimony suggesting that the girls' beds were too small to accommodate Westcott and two girls. Relatives testified that they noticed no change in Westcott's relationship with the girls.

## I.

Westcott alleges first that the trial court erred in overruling his motion for a new trial, and the hearing court erred in denying his Rule 29.15 motion for post-conviction relief because he did not have an opportunity to testify on his own behalf. The trial court did not make a record concerning whether or not Westcott's decision not to testify was voluntary but did hear oral arguments after Westcott raised the matter for the first time in his motion for a new trial.

## A.

■ In this appeal, Westcott argues:

In order to determine whether a violation [of a defendant's constitutional right to testify in his own behalf] has occurred, the reviewing court must examine the individual facts of the case to determine if the defendant has made a knowing, voluntary, and intelligent waiver. *Nichols [v. Butler]*, 917 F.2d [518, 521] n. 1 [(11th Cir.1990)]; *[United States v.] Teague*, 908 F.2d [752,] 759 [(11th Cir. 1990)]. The absence of an on-the-record objection by the defendant at trial is of little, if any, value in this determination, particularly when the defendant is represented by counsel. *Id.* at 759.[2]

This court's Southern District has ruled "that the order of trial in a felony case nowhere requires that a hearing be conducted to determine that a defendant is waiving his right to testify in his own behalf. Rule 27.02." *State v. Gray*, 812

---

1. All statutory references are to the Revised Statutes of Missouri of 1986.

2. Nichols was vacated and superseded by *Nichols v. Butler*, 953 F.2d 1550 (11th Cir.1992), and

Teague was vacated and superseded by *United States v. Teague*, 953 F.2d 1525 (11th Cir.1992).

S.W.2d 935, 940 (Mo.App.1991). The trial court heard oral arguments concerning the point and denied the motion.

We have no record of what Westcott's counsel told the court during the oral argument. Later in the hearing on Westcott's Rule 29.15 motion, Westcott's attorney testified that he informed Westcott of his right to testify and the possible consequences. The attorney said that Westcott was afraid that if he testified the jury would hear damaging information about his relationship with the Division of Family Services. He said that Westcott alone made the decision not to testify, and he was adamant in his decision. He added that, while the state was presenting its case, he asked Westcott one more time whether he wanted to testify, and Westcott reaffirmed his decision not to testify. We conclude that the trial court took sufficient steps to satisfy itself that Westcott had decided voluntarily against testifying. It heard counsel argue the motion for new trial and assessed the case on its individual facts. We reject Westcott's point.

### B.

We reach the same conclusion concerning the motion court's denial of Westcott's Rule 29.15 motion. The motion court had ample evidence from which to conclude that Westcott's counsel fully informed Westcott of his right to testify and that Westcott knowingly, voluntarily and intelligently waived that right during trial, but changed his mind after hearing the jury's verdict. Our review of the motion court's decision is limited to determining whether the court's findings of fact and conclusions of law are clearly erroneous. Rule 29.15(j). We should reverse only if our review of the entire record leaves us with a definite, firm impression that the motion court made a mistake. *Sanders v. State*, 738 S.W.2d 856, 857 (Mo. banc 1987). We discern no basis for overturning the motion court's ruling.

### II.

Westcott's second point on appeal is that he was improperly convicted of sexual abuse in the first degree under §§ 566.010 through 566.100. He contends that the state did not carry its burden of proving sexual abuse in the first degree because it established only that he rubbed the victim's chest, not her breast.

Section 566.010(2) defines sexual contact as "any touching of the genitals or anus of any person, or the breast of any female person, or any such touching through the clothing, for the purpose of arousing or gratifying sexual desire of any person[.]" Westcott mistakenly focuses on touching the breast rather than the statute's complete definition. The victim told the jury that Westcott touched her sexually three times. On two of the occasions, she said, Westcott touched her breasts under her clothing. Concerning the first touching, the victim was asked:

Q. Then what happened?

A. He sticked his hand down my biker shorts from the pant legs and put it on my private place.

Q. What happened next?

A. He put his finger in me.

Q. In your private part?

A. Yes.

Q. Between your legs?

A. Yes.

Q. And then what did he do?

A. He moved it in and out.

Viewing the evidence in the light most favorable to the verdict, the jury had sufficient evidence to support its verdict that on all three occasions, Westcott touched either the victim's genitals or breast or both. We affirm the trial court on this point.

### III.

Westcott's last point on appeal is that the motion court erroneously denied his Rule 29.15 motion because he established that he did not receive effective assistance of counsel. He argues that he proved that his attorney did not call two key defense witnesses; did not impeach the victim with prior inconsistent statements; and did not object to rebuttal testimony concerning whether victims of sexual abuse hate the adult who abuses them.

## A.

Westcott complains that his attorney did not call two other children living in the house at the time of the abuse. He asserts that they would have testified that he did not have sexual contact with the victims on the dates in question. To show that his attorney was ineffective in not calling the witnesses, Westcott must show more than mere speculation as to what the witnesses testimony would have been. *Harry v. State*, 800 S.W.2d 111, 115 (Mo.App.1990). "Ordinarily, [an attorney's] choice of witnesses is a matter of trial strategy and will support no claim of ineffective assistance of counsel." *State v. Meadows*, 785 S.W.2d 635, 643 (Mo.App.1990). "[S]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable[.]" *Strickland v. Washington*, 466 U.S. 668, 690, 104 S.Ct. 2052, 2066, 80 L.Ed.2d 674 (1984).

The witnesses Westcott believes should have been called testified in a hearing that they did not see Westcott touch the victim in a sexual way, but the attorney said he decided not to call them because they could not say that sexual contact did not occur; they simply did not know one way or the other. One of the uncalled witnesses could have testified that the victim sneaked out at night before Westcott was arrested, but Westcott's attorney was worried that this testimony would "backfire" on Westcott by causing the jury to conclude that the victim sneaked out to avoid being abused. The attorney made a reasonable trial strategy decision not to call the witnesses.

## B.

■ Westcott also argues that his attorney was ineffective because he failed to cross-examine and to impeach the victim and her sister with prior inconsistent statements to the police. The victim told police that she had been abused four times. At trial, she said Westcott had abused her three times. A "decision whether or not to impeach a witness with prior inconsistent statements is a matter of trial strategy and cannot be the basis of a breach of any duty towards movant." *Berry v. State*, 714 S.W.2d 676, 678 (Mo.App.1986). Unless "a strategic choice is declared to have been unsound, the strong presumption of correct action overcomes an ineffective assistance allegation." *Id.*

## C.

■ Westcott's last argument in support of his rule 29.15 motion is that his attorney was ineffective for not objecting to the state's rebuttal testimony from an investigator for the Division of Family Services that it was "very common" for sexually-abused children not to hate the offending parent. Westcott argues that this was "expert opinion" and was improper given the investigator's limited experience: three sexual abuse cases.

The investigator testified:

Q. [H]ave you had occasion to have situations where those particular incidents of sexual abuse have been substantiated by admissions of the defendant?

A. Yes, I have.

Q. And in those situations have you seen occasions where the child does not hate the parent?

A. Yes, that's very common.

The investigator was not offering opinion testimony. She testified to facts she had observed—instances in which sexually-abused children had not hated their parents for abusing them. "Counsel cannot be deemed ineffective for failing to make non-meritorious objections." *Walls v. State*, 779 S.W.2d 560, 562 (Mo. banc 1989), *cert. denied*, 494 U.S. 1060, 110 S.Ct. 1538, 108 L.Ed.2d 777 (1990). We discern no merit in Westcott's claim.

## IV.

■ Pending is Westcott's motion for remand because of newly-discovered evidence. Westcott offers affidavits of two witnesses, Amy Tyler, who claims to have overheard the victim say that Westcott did not rape her, and Brandi Atwell, who claims to have overheard the victim say that "[Westcott] did not even do it." The state filed the victim's affidavit in which

she denied the truthfulness of Tyler's and Atwell's affidavits.

Tyler said in her affidavit that she overheard the statement at the Maryville County Fair. She heard a voice she recognized as the victim's say "something about a past boyfriend and then she said that her father didn't do it or her stepfather." She did not hear the entire conversation, and she could not identify the other girl to whom the victim was talking.

Atwell said she overheard the victim talking to another girl at the local public swimming pool. She said:

[T]hey started talking about [Westcott]. I don't remember how it got on there. When I came in there she was just talking about[,] well, he's in jail and this other girl was, like, what happened? She just said he grounded her, something like that. He had punished her some way and she wanted to get out of it. So she said that he had raped her and made up this story. And she started laughing and she said he didn't even do it, because she just didn't want to be grounded. She didn't want to put up with it.

The law does not favor new trials based on newly-discovered evidence. *State v. Amrine*, 741 S.W.2d 665, 674 (Mo. banc 1987), *cert. denied*, 486 U.S. 1017, 108 S.Ct. 1756, 100 L.Ed.2d 218 (1988). To obtain a new trial based on newly-discovered evidence, Westcott must show:

[T]he evidence has come to [his] knowledge ... since the trial; ... it was not owing to want of due diligence that it was not discovered sooner; ... the evidence is so material that it would probably produce a different result on a new trial; and ... it is not cumulative only or merely impeaching the credit of the witness.

*State v. Williams*, 652 S.W.2d 102, 114 (Mo. banc 1983).

Tyler's and Atwell's testimony is hearsay, useful perhaps for impeaching the victim's testimony, but not as substantive evidence. If the only usefulness of newly-found evidence is to impeach, the motion for remand must be denied. It does not satisfy the *Williams* test.

■ Impeachment evidence challenges a witness' credibility. Contradictory evidence, on the other hand, challenges a witness' accuracy and ordinarily supplies additional facts. We discern no new, substantive facts in these affidavits—only genuine hearsay to unknown persons.

We distinguish this case from *State v. Mooney*, 670 S.W.2d 510 (Mo.App.1984), where this court granted a motion to remand after the deadline for filing for a new trial on the grounds of newly-discovered evidence. In *Mooney*, a child abuse victim recanted in a tape-recorded statement. The victim had a history of juvenile delinquency and had spent several months in a mental hospital. He was under a psychiatrist's care and had been on medication. His mother testified that he had often lied to her.

Not only has the victim in this case not recanted, she has signed an affidavit reaffirming her testimony at trial as true. The victim's contradictory statements were to unknown persons overheard by friends of Westcott's family and must be viewed with much suspicion. The circumstances of this case compels us to deny the motion for remand.

## V.

■ Finally, we examine Westcott's motion to strike the appendix attached to the state's motion to file an affidavit. We grant the motion because the appendix contained uncertified statements which were not part of the record. *Kersting v. Director of Revenue*, 792 S.W.2d 651, 652 (Mo.App.1990).

We conclude that Westcott's contentions of error are without merit. We affirm the judgement of the trial court.

All concur.