STATE of Missouri, Respondent,

v.

Patrick J. MARLOW, Appellant.

No. WD 47962.

Missouri Court of Appeals,
Western District.

Dec. 13, 1994.

Richard E. McFadin, Kansas City, for appellant.

Philip M. Koppe, Asst. Atty. Gen., Kansas City, for respondent.

Before HANNA, P.J., and BRECKENRIDGE and SMART, JJ.

HANNA, Judge.

The defendant, Patrick J. Marlow, was convicted by a jury of forcible rape (§ 566.030, RSMo 1986) and sentenced as a prior, persistent and class X offender (§§ 558.016, 558.019, RSMo Supp.1993) to twenty-one years imprisonment. The defendant raises four issues on appeal. The first two points claim plain error because the trial court did not strike a juror for cause and because the prosecutor impermissibly referred to the defendant's Fifth Amendment right not to testify. The final two points speak to a claim of error in the admission of evidence and the sufficiency of the evidence to sustain the conviction.

On May 15, 1992, the victim, Shelley Elliott, left her home at approximately 10:00 p.m. with her friend, Ms. Carullo, and went

to Weatherby's Bar to drink and play pool. While there, they met with friends, including the defendant and his girlfriend, Vicki. The defendant was a friend of Ms. Elliott's husband. Ms. Elliott and her husband were separated. Ms. Elliott remained at the bar until around 2:30 a.m. when she, Ms. Carullo and others, including the defendant and Vicki, left the bar and continued the party at Ms. Elliott's home. The defendant and Vicki were arguing when they left the party together, approximately one hour after their arrival. The party concluded at approximately 5:00 a.m., and Ms. Elliott locked all of her doors and went straight to bed.

At around 8:00 a.m. that morning she was awakened by a noise, possibly coming from the front door. She awoke to find the defendant in her bedroom. She asked him what he was doing and he said, "me and Vicki is still fighting." He told her "I've always wanted to get into your pants, but I never could because you were David's girl, but you're not David's girl any more."

The defendant began making sexual advances and climbed on top of her and started removing her clothes. Ms. Elliott struggled a little and asked him not to "do this to me, Patrick." She tried to push him away with her hands and began kicking her feet, but was unsuccessful in getting him off of her. She repeatedly asked him to stop, but when she realized that her protestations were not going to do any good, she "was just hoping for him to get it done."

When he finished raping her, she rolled over and started crying. She heard him go through her kitchen cabinets and then leave the house. She telephoned her estranged husband, David, and told him that she had been sexually assaulted by the defendant, identifying him by name. Mr. Elliott immediately telephoned Ms. Carullo who, in turn, called Ms. Elliott. Ms. Carullo described Ms. Elliott as being upset and crying.

The police and Ms. Carullo arrived at Ms. Elliott's house about the same time. Ms. Elliott's neck and chest were red. The investigating officers noted that she was crying and somewhat hysterical. Ms. Elliott told them that the defendant kept saying how much he wanted her, and that he had undressed her and raped her.

Examination in the emergency room at North Kansas City Hospital revealed "an abrasion at the opening of the vagina." The tissue had been scraped so forcibly that the blood vessels had ruptured, and blood was present. Non-motile sperm was also present in the vagina. Testimony revealed that the sheets removed from the victim's bed contained several pubic hairs and semen stains. One of the pubic hairs recovered from the sheets was "microscopically indistinguishable" from a pubic hair sample taken from the defendant. The semen stain contained "A," "B," and "H" blood group antigens. Since the defendant was grouped as an "A.B.O. type 'A' secretor," the state's evidence showed that he was among approximately 33% of the population who could be a possible contributor.

█ In his first point, the defendant argues that the court erred by not removing a venireperson, or alternatively, discharging the jury. During voir dire, the defense counsel's questions of juror number 16, Mr. Allen Fields, revealed that the venireperson believed that the defendant should testify, and that he didn't think the case would have gotten this far had the defendant not been there. However, Mr. Fields also stated, on examination by the prosecutor that, based upon the charge alone, he did not believe that the defendant was presumed guilty of the offense charged. He also stated that he did not believe his feelings would affect his ability to be impartial, that he would listen to the evidence and be guided by the court's instructions. He specifically stated that if he were selected as a juror he would hold the state to its burden of proving the case beyond a reasonable doubt, and agreed with the presumption of innocence.

When the attorneys were conferring with the court following voir dire, the court specifically asked defense counsel if he wanted to challenge Mr. Fields for cause. Defense counsel declined to do so. The defendant's motion for new trial fails to assign this issue as error. Now, for the first time, the defendant argues that the trial judge had a responsibility to remove Mr. Fields for cause

*sua sponte* or to quash the entire jury panel because of Mr. Fields' comments.

■ When the defendant is aware of facts which would sustain a challenge for cause, he must present his challenge during the voir dire examination or prior to the swearing of the jury, otherwise, the point is waived. *State v. Boyet,* 620 S.W.2d 439, 440 (Mo.App. 1981). This requirement of contemporaneous objections to the venireperson's qualifications "serves to minimize the incentive to sandbag in the hope of acquittal and, if unsuccessful, mount a post-conviction attack on the jury selection process." *State v. Hadley,* 815 S.W.2d 422, 423 (Mo. banc 1991). In this case, when asked by the trial court, the defendant expressly and pointedly refrained from challenging Mr. Fields for cause. There was no plain error. Point denied.

■ The defendant's second point claims that the court committed plain error in failing to declare a mistrial *sua sponte* because of two separate comments made by the assistant prosecuting attorney during the course of the trial. The first incident took place when the defense announced that it rested its case. The prosecutor asked to approach the bench and then inquired of the judge regarding a record that should be made about the defendant's right not to testify. An objection to the prosecutor's remark was sustained. The defendant maintains that the prosecutor's remarks at the bench were within the hearing of the jury. The second incident about which the defendant complains occurred during closing argument.

■ The defendant's argument that the trial court erred by failing to discharge the jury *sua sponte* raises a serious constitutional dilemma for the trial court. The defendant has a "valued right" under the double jeopardy clause of the Fifth Amendment of the United States Constitution to have his trial completed by a particular tribunal. *Wade v. Hunter,* 336 U.S. 684, 689, 69 S.Ct. 834, 837, 93 L.Ed. 974 (1949). This right has been extended to apply to state trials. *Benton v. Maryland,* 395 U.S. 784, 787, 89 S.Ct. 2056, 2058–59, 23 L.Ed.2d 707 (1969). To prevent violation of this right, the double jeopardy clause may very well defeat the legitimate right of the state to retry the defendant if a judge declares a mistrial absent the defendant's request or consent. *See United States v. Jorn,* 400 U.S. 470, 479–81, 91 S.Ct. 547, 554–55, 27 L.Ed.2d 543 (1971); *State v. Tolliver,* 839 S.W.2d 296, 299 (Mo. banc 1992). The courts have not established a firm or bright line test, leaving the decision to an uncertain case by case analysis. In those situations where a trial court declares a mistrial *sua sponte,* a retrial is permitted only in the event that there was a "manifest necessity" for such an action, *Oregon v. Kennedy,* 456 U.S. 667, 672, 102 S.Ct. 2083, 2087–88, 72 L.Ed.2d 416 (1982), or when the "ends of public justice" would otherwise have been defeated. *Illinois v. Somerville,* 410 U.S. 458, 463–64, 93 S.Ct. 1066, 1070, 35 L.Ed.2d 425 (1973). The circumstances here did not rise to "manifest necessity" or require that a mistrial be declared to satisfy the "ends of public justice."

Nevertheless, there is no indication, other than defendant's claim, that the comments were heard by the jury. The court stated, "I don't believe the jury could hear any comments made here at the bench absent something else which would indicate that it, I'm facing the jury and I couldn't see that anybody gave any recognition that they were paying any attention frankly to what we were doing here." The court noted that his position was approximately fifteen to twenty feet from the jury box. An objection and statement of counsel "are not evidence of the facts stated in the objection." *State v. Warters,* 457 S.W.2d 808, 811–12 (Mo.1970).

The second incident arose during closing arguments when the prosecutor asked, "Did we hear testimony from the defendant's girlfriend, Vicki? No, we didn't. Did [defendant's attorney] call anybody that said, Patrick Marlow was with me at 7:30 or 8 o'clock in the morning of May 16th, 1992?" The defendant objected and his objection was sustained. The defendant then requested that the court instruct the prosecutor not to make any further comment regarding the defendant's right not to testify. The court expressed reservation that the comment was a reference to defendant's right not to testify, but nevertheless instructed counsel to

"leave that area alone." No further relief was requested.

■ The state is prohibited from referring to the defendant's failure to testify, but it is not precluded from commenting on his failure to offer evidence. *State v. Sidebottom,* 753 S.W.2d 915, 920 (Mo. banc), *cert. denied,* 488 U.S. 975, 109 S.Ct. 515, 102 L.Ed.2d 550 (1988). The prosecutor made reference to the lack of evidence and not the defendant's right to remain silent. Point denied.

■ In the defendant's next point he claims the court erred when it overruled the defendant's objection to the admission of photographic slides. The defendant claims the comparison slides were erroneously admitted because their prejudicial effect outweighed their probative value. These slides were viewed side-by-side through two comparison microscopes. The forensic chemist at the Regional Crime Laboratory in Kansas City testified that she could make a positive match between an unknown or foreign hair and a hair standard but could not say positively that it came from a certain individual. She conceded that hair analysis was not as accurate as fingerprint comparison evidence, but testified that the defendant was "a possible contributor [of] that hair." The two hairs, when viewed side-by-side under the comparison microscopes, were described as "microscopically indistinguishable." The witness testified that this meant that the defendant was part of a very small percentage of the population which could have been the source of the hair.

■ Demonstrative evidence is admissible and relevant when it tends to connect a defendant to the crime, or throw light upon a material fact in issue in the case. *State v. Isa,* 850 S.W.2d 876, 890 (Mo. banc 1993). The trial court is vested with broad discretion in determining the admissibility of photographic evidence, such as pictures or slides, and photographs which tend to corroborate the testimony of the witness, assist the jury in understanding the facts or prove an element of the case are admissible. *Id.* The expert's testimony along with the photographic slides aided the jury in its understanding of the specific characteristics of each hair, the nature of the similarities in the hair compared and the manner in which the witness's analysis was conducted. Point denied.

■ Finally, the defendant challenges the sufficiency of the evidence to support the conviction of forcible rape. He argues that the verdict was against the weight of the evidence and that there was a lack of substantial evidence to support the verdict because (1) the victim's testimony was so contradictory and inconsistent that corroboration was necessary; and (2) there was no evidence of forcible compulsion, a necessary element of the crime.

■ Our review accepts as true all of the evidence favorable to the state, including all favorable inferences to be drawn from the evidence and disregards all contrary evidence and inferences. *State v. Grim,* 854 S.W.2d 403, 405 (Mo. banc), *cert. denied,* —— U.S. ——, 114 S.Ct. 562, 126 L.Ed.2d 462 (1993). We neither weigh the evidence, *State v. Villa–Perez,* 835 S.W.2d 897, 900 (Mo. banc 1992), nor determine the reliability or credibility of the witnesses. *State v. Middleton,* 854 S.W.2d 504, 506 (Mo.App.1993). We only review to determine whether there was substantial evidence from which a reasonable jury might have found the defendant guilty beyond a reasonable doubt. *Grim,* 854 S.W.2d at 405.

■ The testimony of a single witness ordinarily is sufficient to constitute substantial evidence and to make a submissible case. *State v. Sumowski,* 794 S.W.2d 643, 645 (Mo. banc 1990). In cases involving sexual offenses, the victim's testimony alone will sustain a conviction even if it is uncorroborated. *State v. Tomlin,* 864 S.W.2d 364, 366 (Mo. App.1993). An exception to this principle is when the witness's trial testimony is so contradictory and in conflict with the physical facts that its validity is doubtful. *State v. Sladek,* 835 S.W.2d 308, 310 (Mo. banc 1992). In this situation, corroboration of the victim's testimony is required to sustain the conviction. *Tomlin,* 864 S.W.2d at 366. The exception is triggered only by inconsistencies or contradiction within the victim's trial testimony. *Id.* It does not apply when the

victim's testimony is inconsistent with her prior out-of-court statements, *State v. Creason*, 847 S.W.2d 482, 485 (Mo.App.1993), or with the testimony of other witnesses, *Sladek*, 835 S.W.2d at 310. The discrepancies must amount to "gross inconsistencies and contradictions," *Tomlin*, 864 S.W.2d at 366, and must go directly to an essential element of the case. *State v. Gardner*, 849 S.W.2d 602, 604 (Mo.App.1993).

The defendant points to "contradictions" between the victim's trial testimony and her out-of-court statements, and also claims it was inconsistent with the testimony of another witness. Her trial testimony regarding the details of the rape itself was not contradictory. There were some minor conflicts of an inconsequential nature between her testimony and another witness and her out-of-court testimony, but they did not go to essential elements of the state's case. Point denied.

Defendant's final claim that the state failed to establish "forcible compulsion" is also without merit. The term "forcible compulsion" is defined in § 556.061(12), RSMo 1986, to include "[p]hysical force that overcomes reasonable resistance." Ms. Elliott testified that the defendant undressed her against her will and that she tried to resist by struggling, pushing, kicking and attempting to persuade him. The record supports the fact that the defendant used force to overcome her reasonable resistance. There was substantial evidence to sustain the forcible compulsion element of the crime. *See State v. Jones*, 809 S.W.2d 37, 39 (Mo.App. 1991).

Judgment of conviction affirmed.