**STATE of Missouri, Respondent,**

v.

**David GATEWOOD, Appellant.**

**No. WD 54047.**

Missouri Court of Appeals,
Western District.

March 17, 1998.

Michael J. Svetlic, Douglas G. Wemhoff, Kansas City, for Appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Catherine Chatman, Asst. Atty. Gen., Jefferson City, for Respondent.

Before ULRICH, C.J., P.J., and HANNA and HOWARD, JJ.

ULRICH, Chief Judge, Presiding Judge.

David Gatewood appeals his conviction following jury trial for forcible rape, section 566.030.1, RSMo 1994. Mr. Gatewood raises two issues on appeal. He contends that the trial court erred in (1) denying his motion for judgment of acquittal at the close of the State's evidence where there was insufficient evidence to find him guilty of forcible rape beyond a reasonable doubt; and (2) denying his motion for new trial based on the victim's alleged statement that she had "framed him." The judgment of conviction is affirmed.

## FACTS

Elizabeth Hughes and David Gatewood were both at Antoinette's Bar on November 27, 1995. Ms. Hughes had previously dated David Gatewood's brother, Donnie Gatewood. When Ms. Hughes noticed Mr. Gatewood at the bar, she approached him to say hello. Ms. Hughes and Mr. Gatewood conversed intermittently over the course of the evening. Ms. Hughes told Mr. Gatewood that she had a fight with her boyfriend earlier that evening and intended to go to a friend's house or get a motel room because her boyfriend was at her house. Mr. Gatewood suggested she stay at his house instead. Ms. Hughes acquiesced to Mr. Gatewood's suggestion, but informed him that she did not want a sexual relationship with him.

Ms. Hughes left Antionette's Bar with Mr. Gatewood at 2:00 or 3:00 a.m. Between 11:00 p.m. and 2:00 or 3:00 a..m., Ms. Hughes had two drinks. On the way to Mr. Gatewood's home, Ms. Hughes passed her own home. While Ms. Hughes considered stopping to pick up some clothes but because her lights were on, she assumed her boyfriend was still there and she did not go inside. Mr. Gatewood assured her she could wear something of his to sleep in.

At Mr. Gatewood's home, Mr. Gatewood suggested that Ms. Hughes sleep in his bed and that he sleep in the living room. Ms. Hughes went to bed wearing a sports bra and shorts borrowed from Mr. Gatewood. A few minutes later, Mr. Gatewood came into the bedroom and asked Ms. Hughes if he could kiss her goodnight. Ms. Hughes agreed and the two engaged in a long kiss. Ms. Hughes allowed Mr. Gatewood to lay on top of her. Ms. Hughes kissed Mr. Gatewood's neck. Mr. Gatewood reached into Ms. Hughes's shorts and inserted his finger into her vagina. Ms. Hughes pushed Mr. Gatewood away and told him she did not want to have sex. Mr. Gatewood threw Ms. Hughes back down on the bed, ripped her sports bra down the middle, squeezed her breasts, pulled her shorts down and inserted his penis into her vagina and ejaculated. While this was occurring, Ms. Hughes continued to physically resist, cried and told Mr. Gatewood to stop, to get off her and that he would go to jail if he persisted.

Mr. Gatewood's roommates, Michael McGrath and Carolyn Rutledge, were at home sleeping that evening. Mr. McGrath was awaked by loud music. Mr. McGrath heard the pictures on his wall moving due to the movement of Mr. Gatewood's bed against their common wall. Mr. McGrath heard a female voice shouting "no, no, no," or "no, stop." Mr. McGrath, however, did not believe anyone was in danger. Mr. McGrath also testified he and Mr. Gatewood later had a falling out and that he did not like Mr. Gatewood. Ms. Rutledge testified that she awoke and heard a female crying and saying, "God, he just raped me." Ms. Rutledge did not hear any loud music. In an earlier written statement Ms. Rutledge made to the

police, however, she did not mention that she heard a female stating she had been raped.

Ms. Hughes left Mr. Gatewood's home after the occurrence and walked to her house. There, she told her brother and her boyfriend what had occurred. She also called Donnie Gatewood and told him to beat up his brother, Mr. Gatewood, or she would call the police. Donnie Gatewood went to his brother's home; Mr. Gatewood expressed his innocence to Donnie Gatewood.

Ms. Hughes later called a friend, Roberta Stubbs, to come to her home. Upon arrival, Ms. Stubbs noticed Ms. Hughes's breast was bruised and her sports bra ripped. At Ms. Hughes's request, Ms. Stubbs took her to the North Kansas City Hospital where Dr. Elizabeth Hierholzer examined Ms. Hughes. Dr. Hierholzer found bruises on both of Ms. Hughes's breasts, swelling of the external vaginal area and an abrasion to the posterior vaginal wall. Dr. Hierholzer opined that Ms. Hughes's injuries were consistent with some type of force being used in digital or penial penetration.

Ms. Hughes gave a statement to Officer Richard Strickem of the Kansas City Police Department. Officer Strickem testified that Ms. Hughes was still upset and crying when he questioned her at 6:30 a.m. the morning of the incident. Ms. Hughes told Officer Strickem that she was raped. Detective Kevin Kilkenny of the Kansas City Police Department investigated the incident. When Detective Kilkenny interviewed Mr. Gatewood, Mr. Gatewood admitted to having sex with Ms. Hughes but claimed it was consensual.

At trial, Mr. Gatewood's defense was that the sexual intercourse was consensual and that Ms. Hughes's motivation for the rape allegation was retaliation against Donnie Gatewood. Donnie Gatewood testified that after he terminated his relationship with Ms. Hughes, she had harassed and threatened him. Donnie Gatewood contacted the police about Ms. Hughes's threatening phone calls on October 27, 1995, one month before the alleged rape. Donnie Gatewood testified that when she called him on the night of the alleged rape that she would not call the police and report the rape if Donnie Gatewood would dismiss the telephone harassment charges.

Mr. Gatewood called Tonya Monaghan as a witness. Ms. Monaghan is an acquaintance of Ms. Hughes and a cousin of Tina Gatewood, Donnie Gatewood's wife. She testified that Ms. Hughes stated she was going to "set those motherfuckers up" because Donnie Gatewood was charging Ms. Hughes with telephone harassment. Officer Richard Newman of the Kansas City Police Department testified, however, that he did not contact Ms. Hughes about the telephone harassment report until December 3, 1995, after the alleged rape. Ms. Hughes was subsequently found not guilty of harassment in the Kansas City Municipal Court.

At the close of all the evidence, the court denied Mr. Gatewood's Motion for Judgment of Acquittal. The jury found Mr. Gatewood guilty of forcible rape and sentenced him to ten years imprisonment.

Mr. Gatewood filed a Motion for New Trial. Mr. Gatewood argued, in support of his motion, that Ms. Hughes had told his brother, Donnie Gatewood, and his wife, Tina Gatewood, that she had framed Mr. Gatewood. This alleged incident occurred on January 21, 1997, at the K–Mart Store in North Kansas City. Ms. Hughes testified that she called the police after Donnie and Tina Gatewood approached her at K–Mart and threatened her. The police responded to the K–Mart Store, but no one was arrested. Ms. Hughes denied stating she framed Mr. Gatewood. The trial court denied the Motion for New Trial, finding that the evidence was cumulative and merely impeached Ms. Hughes's trial testimony. This appeal followed.

## I. MR. GATEWOOD WAS NOT ENTITLED TO A JUDGMENT OF ACQUITTAL

As his first point on appeal, Mr. Gatewood argues that the trial court erred in denying his motion for judgment of acquittal where insufficient evidence existed to support the conviction of forcible rape. He contends the evidence was insufficient to support the forcible rape conviction because (1) no evidence

of forcible compulsion, a necessary element of the crime, was presented; and (2) the victim's testimony was so contradictory and inconsistent that corroboration was necessary and no such corroboration was presented.

In determining the sufficiency of the evidence, all evidence and inferences reasonably drawn from the evidence are viewed in the light most favorable to the verdict, and contrary evidence and inferences are disregarded. *State v. West*, 939 S.W.2d 399, 401 (Mo.App.1996); *State v. Graham*, 906 S.W.2d 771, 778 (Mo.App.1995). Review of the sufficiency of evidence is limited to determination of whether the evidence was sufficient for reasonable persons to have found the defendant guilty as charged beyond a reasonable doubt. *Id.* Credibility of witnesses and inconsistencies in testimony are for the jury to consider. *Id.*

The testimony of a single witness is ordinarily sufficient to constitute substantial evidence and to make a submissible case. In cases involving sexual offenses, the victim's testimony alone will sustain a conviction even if uncorroborated. *State v. Harris*, 620 S.W.2d 349, 353 (Mo. banc 1981); *Graham*, 906 S.W.2d at 779; *State v. Marlow*, 888 S.W.2d 417, 421 (Mo.App.1994). An exception to this rule exists if the victim's trial testimony is so contradictory and in conflict with physical facts, surrounding circumstances and common experience, that its validity is thereby rendered doubtful. *Id.* In cases where the testimony is extremely self-contradictory or in conflict with physical facts, corroboration of the victim's testimony is required to sustain the conviction. (*Graham*, 906 S.W.2d at 778; *Marlow*, 888 S.W.2d at 422). The "corroboration rule" is triggered only by contradictions in the victim's trial testimony and not by inconsistencies with the victim's out-of-court statements or the testimony of other witnesses. *Id.* The discrepancies must amount to "gross inconsistencies and contradictions" and must relate directly to an essential element of the case. *Id.* To invoke the corroboration rule,

the victim's trial testimony must be so contradictory and so conflicting as to be "inherently incredible, self-destructive or opposed to known physical facts." *Id.*

Whether the evidence supported a finding of "forcible compulsion" as required by section 556.030.1 is first determined. Section 566.030.1, RSMo Supp.1995, provides that "[a] person commits the crime of forcible rape if he has sexual intercourse with another person by use of forcible compulsion." § 566.030.1, RSMo Supp.1995. "Forcible compulsion" is defined as either

(a) Physical force that overcomes reasonable resistance; or

(b) A threat, express or implied, that places a person in reasonable fear of death, serious physical injury or kidnaping of himself or another person.

§ 556.061(12), RSMo 1994.

In *Marlow*, the defendant contended that the evidence was insufficient to support a finding of "forcible compulsion" under section 566.030.1. *Marlow*, 888 S.W.2d at 422. There, the defendant had undressed the victim against her will while she tried to resist by struggling, pushing, kicking and attempting to persuade him, and then he raped her. *Id.* The court held the defendant's use of his strength to undress the victim against her will and then to accomplish sexual intercourse with her against her will constituted the use of "physical force" as contemplated in section 566.030.1(a). *Id.* The victim's attempts to resist the defendant's sexual advances, including struggling, pushing, kicking and attempting to verbally dissuade him from continuing constituted "reasonable resistance" under section 566.030.1(a). *Id.* The court concluded, therefore, that because the evidence established that the victim used reasonable resistance to overcome the defendant's use of physical force, the evidence was sufficient to support the jury's finding of forcible compulsion under section 566.030.1.

Here, too, the evidence was sufficient to support a finding that Mr. Gatewood accomplished sexual intercourse with Ms.

Hughes by the use of "forcible compulsion." Under section 556.061(12), the term "forcible compulsion" is defined to include "[p]hysical force that overcomes reasonable resistance." § 556.061(12), RSMo. Viewing the evidence in the light most favorable to the verdict, the evidence established that Mr. Gatewood used physical force to overcome Ms. Hughes's reasonable resistence. Ms. Hughes testified that when Mr. Gatewood forced his finger into her vagina, she physically pushed Mr. Gatewood away from her. As in *Marlow*, Ms. Hughes continued to struggle while Mr. Gatewood ripped Ms. Hughes's sports bra, undressed her against her will and physically held her down with his hands and knees in order to accomplish sexual intercourse. As in *Marlow*, Ms. Hughes tried to dissuade Mr. Gatewood from raping her by telling him to stop, that she did not want to have sex with him and that he would go to jail if he had sex with her. Ms. Hughes sustained bruises on both breasts as well as abrasions to her posterior vaginal wall. Mr. Gatewood's two roommates both heard Ms. Hughes stating "no, no, no" or "no, stop" and "God, he just raped me." Ms. Hughes's verbal objections and physical resistance to Mr. Gatewood's advances supports a finding of forcible compulsion just as the victim's verbal protests and physical resistance in *Marlow*'s established forcible compulsion. The trial court, therefore, did not err in denying Mr. Gatewood's motion for judgment of acquittal on the grounds that no evidence of forcible compulsion was presented.

Whether Ms. Hughes's trial testimony was so contradictory and inconsistent that corroboration was necessary is next determined. Mr. Gatewood's argument that Ms. Hughes's testimony was contradictory primarily focuses on how her testimony conflicted with the testimony of other witnesses and with her out-of-court statements. For example, Mr. Gatewood argues that Ms. Hughes testified at trial that she never told Mr. Gatewood to stop kissing her, but she told Dr. Hierholzer, the examining physician, she asked him to stop; Ms. Hughes could not remember if music was playing while Mr. McGrath stated

music was playing loudly; Ms. Hughes testified that her arms and breasts were bruised but Dr. Hierholzer found only one bruise on her breast; Ms. Hughes testified her vagina was bleeding from the struggle but Dr. Hierholzer found no evidence of vaginal bleeding; Ms. Hughes testified that she was screaming and yelling but neither of Mr. Gatewood's roommates heard her; and Ms. Hughes testified that Mr. Gatewood picked her up and turned her sideways during the incident yet she did not mention this to the police when she was interviewed the morning of the incident.

As recognized by the court in *Graham* the corroboration rule is triggered only when contradictions in the victim's trial testimony occur not when there are contradictions between the victim's trial testimony and another witness's testimony or between the victim's trial testimony and the victim's out-of-court statements. *Graham*, 906 S.W.2d at 778. The alleged inconsistencies between Ms. Hughes's trial testimony and her out-of-court statements and between her trial testimony and the testimony of other witnesses, therefore, do not prompt application of the corroboration rule.

Mr. Gatewood next argues that corroboration was mandated because Ms. Hughes's version of the rape is "improbable" because Ms. Hughes could not recall the specific day of the week the alleged rape occurred and because she voluntarily left the bar with him, voluntarily accompanied him to his home and voluntarily kissed him. Ms. Hughes's uncertainty regarding which day of the week the alleged rape occurred does not support imposition of the corroboration rule. While Ms. Hughes was uncertain which day of the week the rape occurred, she was certain that it occurred on November 28, 1995, in the early morning hours and thought that November 28, 1995, was a Sunday night. Given that the date of Ms. Hughes's rape is undisputed, the day of the week on which November 28, 1995, fell was a collateral matter. The "testimony of the victim is not considered to be 'clouded with doubt' or 'ex-

tremely doubtful'... merely because [it] falls into inconsistencies or contradictions as to minor points of a nonessential nature." *State v. Edwards*, 699 S.W.2d 39, 40 (Mo. App.1985). Inconsistencies in collateral matters affect only the credibility of the witness and go to the weight of the evidence and do not warrant application of the corroboration rule. *State v. Hires*, 583 S.W.2d 204, 208 (Mo.App.1979). Because Ms. Hughes's inability to recall the day of the week on which the rape occurred was a collateral matter, application of the corroboration rule was not warranted.

■ Ms. Hughes's actions in voluntarily accompanying Mr. Gatewood to his home and allowing him to kiss her and lay on top of her likewise do not support application of the corroboration rule. While Ms. Hughes's allowing Mr. Gatewood to kiss her and lie with her on the bed were relevant to the issue of consent, the facts went only to the weight and credibility of her testimony and were, therefore, within the jury's province to resolve. The jury was entitled to deduce that while Ms. Hughes consented to kissing Mr. Gatewood, she did not consent to engage in sexual intercourse with him. Because none of the alleged contradictions relate to the essential element of forcible compulsion and because Ms. Hughes consistently testified that Mr. Gatewood used forcible compulsion to accomplish sexual intercourse, corroborating evidence was not required and appraisal of Ms. Hughes's testimony was for the jury. The trial court, therefore, did not err in denying Mr. Gatewood's motion for judgment of acquittal. Point one is denied.

## II. MR. GATEWOOD IS NOT ENTITLED TO A NEW TRIAL

■ As his second point on appeal Mr. Gatewood argues that the trial court erred by denying his motion for a new trial. Mr. Gatewood argues that Ms. Hughes's alleged statement that she framed Mr. Gatewood constitutes newly discovered evidence warranting a new trial. To warrant a new trial based on post-trial newly discovered evidence, the defendant must show: (1) the evidence has come to the knowledge of the defendant since the trial; (2) it was not owing to want of due diligence that it was not discovered sooner; (3) the evidence is so material that it would probably produce a different result at a new trial; and (4) it is not cumulative only or merely impeaches the credibility of the witness. *State v. Whitfield*, 939 S.W.2d 361, 367 (Mo. banc 1997), *cert. denied*, —— U.S. ——, 118 S.Ct. 97, 139 L.Ed.2d 52 (1997); *State v. Amrine*, 741 S.W.2d 665, 674 (Mo. banc 1987), *cert. denied*, 486 U.S. 1017, 108 S.Ct. 1756, 100 L.Ed.2d 218 (1988). The trial court has substantial discretion in ruling on a motion for a new trial based upon newly discovered evidence, and its decision will not be disturbed absent an abuse of discretion. *Whitfield*, 939 S.W.2d at 367; *Amrine*, 741 S.W.2d at 674; *State v. Williams*, 652 S.W.2d 102, 114 (Mo. banc 1983). The law does not favor new trials based on newly-discovered evidence. *Amrine*, 741 S.W.2d at 674; *State v. Westcott*, 857 S.W.2d 393, 398 (Mo.App.1993).

Mr. Gatewood has failed to establish his entitlement to a new trial. To establish entitlement to a new trial, Mr. Gatewood was required to show that the newly discovered evidence "is not cumulative only or merely impeaching the credibility of the witness." *Whitfield*, 939 S.W.2d at 367; *Amrine*, 741 S.W.2d at 674. Impeachment evidence is evidence which challenges a witness's credibility. *Westcott*, 857 S.W.2d at 398. Contradictory evidence challenges a witness's accuracy and ordinarily supplies additional facts. *Id.* In *Westcott*, the defendant was convicted of sexual abuse and sexual assault of his wife's teenage daughter. *Id.* at 395. The defendant filed a motion for a new trial and offered, in support of his motion, the affidavits of two witnesses who allegedly overheard the victim state that the defendant did not rape her and that "[the defendant] did not even do it." *Id.* at 397. The victim filed an affidavit denying the truthfulness of the witnesses' affidavits. *Id.* at 398. The court found the defendant was not entitled to a

new trial based on the alleged statements of the victim. *Id.* The court reasoned that the witnesses' testimony was hearsay, useful only for impeaching the victim's testimony, and, thus, could not be used as substantive evidence. *Id.*

■ Here, too, the alleged statement of Ms. Hughes to Donnie and Tina Gatewood that she framed David Gatewood constitutes impeachment evidence that is insufficient to support granting of a new trial. Ms. Hughes testified at trial that Mr. Gatewood had raped her. No additional facts were supplied by Ms. Hughes's alleged statement to Donnie and Tina Gatewood. Her alleged out-of-court statement that she "framed" Mr. Gatewood for the rape, therefore, served only to impeach her trial testimony. Additionally, the evidence proffered by Mr. Gatewood in support of his motion for new trial is cumulative. Mr. Gatewood's trial strategy was that Ms. Hughes framed him in retaliation for his brother filing telephone harassment charges against her. Tonya Monaghan testified on behalf of Mr. Gatewood that Ms. Hughes had told her she was going to "set those motherfuckers up." The theory that Ms. Hughes conjured the story that Mr. Hughes raped her, therefore, was presented at trial and rejected by the jury. Because Ms. Hughes's alleged statement that she "framed" Mr. Gatewood constitutes impeachment evidence only and was cumulative, Mr. Gatewood has failed to establish entitlement to a new trial.[1] The trial court, therefore, did not abuse its discretion in denying Mr. Gatewood's motion for a new trial. Point two is denied.

The judgment of conviction is affirmed.

All concur.

1. Because Mr. Gatewood has failed to establish the fourth prong, determining whether the evidence came to the knowledge of the defendant since the trial; whether the failure to present the evidence at trial was not owing to want of due diligence; and whether the evidence is so material that it would probably produce a different result on a new trial is unnecessary.