STATE of Missouri, Respondent,

v.

Edward Albert NEWMAN, Appellant.

No. 59116.

Missouri Court of Appeals,
Eastern District,
Division Three.

Sept. 8, 1992.

Craig A. Johnston, Columbia, for appellant.

William L. Webster, Atty. Gen., Joan F. Edwards, Asst. Atty. Gen., Jefferson City, for respondent.

GARY M. GAERTNER, Presiding Judge.

Appellant, Edward Albert Newman, appeals his conviction from the Circuit Court of the County of St. Charles of three counts of sodomy, RSMo § 566.060 (1986); one count of deviate sexual assault in the first degree, RSMo § 566.070 (1986); and two counts of indecent exposure, RSMo § 566.130 (1986). Additionally, appellant appeals from a denial of his Rule 29.15 motion following an evidentiary hearing. We affirm in part, remand in part.

During 1988 and 1989, appellant served as acting chaplain, recruiting officer and public affairs officer of the Civil Air Patrol (CAP) in St. Charles County. At no time during his service with CAP did appellant's duties require him to provide uniforms to the young boys involved in the organization. In April of 1988, fourteen year old T.W. attended a CAP meeting. At this gathering, appellant asked T.W. to try on some of the uniforms in a storeroom. None of the uniforms fit. Appellant, using a tailor's measure, proceeded to measure T.W.'s arms and the inside of his legs as T.W. stood in his underwear. While measuring, appellant's hand went inside TW.'s underwear, touched his genitals, and lingered there for a short time. Appellant then proceeded to measure the other leg. T.W. did not report the incident, thinking it may have been an accident.

In September or October of 1988, S.F., a thirteen year old CAP member, stopped by appellant's trailer to drop off a newspaper article concerning the organization. Appellant requested that S.F. try on a couple of CAP uniforms. Although S.F. asked to use the bathroom for changing, appellant insisted S.F. use appellant's bedroom. When the pants did not fit, appellant brought out a tape measure, measuring the inside of S.F.'s thighs a number of times. In so doing, appellant's knuckles moved inside S.F.'s underwear and against his genitals. Shocked and embarrassed, S.F. backed away and quickly left the room saying he heard his mother calling. S.F. did not report the incident at that time.

A few months later, in January of 1989, appellant contacted twelve year old M.L., a new member of CAP, to schedule a CAP-required, one-mile run. Appellant picked up M.L. and drove him to St. Charles West High School for the run. Although appellant told M.L. that other cadets would be running, no one else showed up. M.L. completed his mile, then accompanied appellant to his trailer for a soda. Upon arriving at the trailer, appellant asked M.L. to try on some of the CAP uniforms. M.L. asked to use the bathroom for changing, but appellant insisted he use the bedroom. After the first pair of pants did not fit, appellant pulled out the tape measure. While measuring M.L.'s inseam, appellant slid his hand under M.L.'s underwear touching his genitals. M.L. told appellant to stop. After squeezing M.L.'s genitals, appellant picked M.L. up, held him to his chest in a bear hug, twirled him around, then threw him on the bed, pinning him face down. As M.L. screamed, attempting to struggle from appellant's grasp, appellant ran his tongue down M.L.'s bare back, turned him over and pulled M.L.'s pants and underwear down to his ankles. Appellant touched M.L.'s genitals with his tongue, stopping only after M.L. kicked him in the groin. On the drive home, appellant asked M.L. what had happened that afternoon.

M.L. told appellant he had run his mile and tried on a few uniforms. Appellant informed M.L. that if anyone was told of the actual events of the afternoon, M.L.'s home would be blown up with dynamite. M.L. told no one.

The evening of February 3rd and the morning of February 4th, 1989, CAP sponsored a "lock-in" at the local Y.M.C.A. During the evening, someone locked S.F. in a locker in the locker room. Appellant showed up and released S.F. from the locker. As they were discussing the event, appellant unzipped his pants, pulled down his underwear, and exposed his penis. It was apparent to S.F. that appellant was starting to get an erection.

That same evening, M.L., allergic to chlorine, entered the locker room to shower after swimming. Appellant was in the locker room as well. Appellant suggested that M.L. remove his swim trunks to shower because of his allergy to chlorine, but M.L. refused to do so. As he was dressing, M.L. noticed appellant standing near a mirror with his pants unzipped and his penis exposed. M.L. later sought counseling and was admitted to the stress unit of a hospital for two weeks.

Thirteen year old J.D. was also a member of CAP. In March of 1989, appellant came to J.D.'s home with uniform fatigues for J.D. to try on. As J.D. entered his brother's room to try on the pants, appellant followed him. When the pants did not fit, appellant produced his tape measure and proceeded to measure J.D.'s inseam. In so doing, appellant bumped J.D.'s groin. A few weeks later when appellant showed up with more uniforms, another bout of measuring took place. Though appellant did not touch J.D. in the groin area, his hand did bump J.D. on the outside of his underwear. J.D. never reported these incidents as he didn't feel anything had happened.

In August 1989, Mary Ruth Krueger, Captain of the St. Charles CAP, asked appellant to leave CAP. Appellant continued

to attend CAP functions and in September, Krueger again told appellant he was not to be involved in CAP activities. Appellant acquiesced, yet it was not until after November 1989 that he ceased appearing at CAP-related functions.

In November of 1989, M.L. informed his father of some of appellant's behavior. Appellant was charged by Information on May 1, 1990. Said information was later amended on July 24, 1990, charging appellant as a prior and persistent offender. A jury found appellant guilty of all six counts charged. On October 1, 1990, appellant was sentenced by the trial court as a prior and persistent offender to fifteen years each on the three counts of sodomy, seven years on deviate sexual assault in the first degree, and one year in the county jail on both counts of indecent exposure. These sentences were to run consecutively.

■ Appellant filed a timely notice of appeal, followed by his February 7th, 1991, filing of a *pro se* motion for post-conviction relief pursuant to Rule 29.15. An amended motion was filed on April 12, 1991, and an evidentiary hearing was held on July 30, 1991. The motion court entered its findings of fact and conclusions of law denying appellant's motion on August 26, 1991. This consolidated appeal followed.[1]

■ Appellant's first of six points on appeal alleges the trial court erred in sentencing him to consecutive sentences on the trial court's assumption these sentences must run consecutively. Appellant asserts that under RSMo § 558.026.1 (1986), the trial court had the discretion to run the sentences for multiple convictions of sex crimes concurrent to each other. Based on recent case law from the Missouri Supreme Court and this court, we agree and remand on this point for a reconsideration of sentence.

Revised Missouri Statutes § 558.026.1 states:

Multiple sentences of imprisonment shall run concurrently unless the court speci-

---

1. Appellant failed to brief issues regarding denial of post-conviction relief. Having raised no claim of error referencing the motion court's

judgment on appellant's Rule 29.15 motion, the Rule 29.15 appeal is abandoned. *State v. Gillispie*, 790 S.W.2d 519, 520 (Mo.App., E.D.1990).

fies that they shall run consecutively; except that, in the case of multiple sentences of imprisonment imposed for the felony of rape, forcible rape, sodomy, forcible sodomy or an attempt to commit any of the aforesaid and for other offenses committed during or at the same time as that rape, forcible rape, sodomy, forcible sodomy or an attempt to commit any of the aforesaid, the sentences of imprisonment imposed for the other offenses may run concurrently, but the sentence of imprisonment imposed for the felony of rape, forcible rape, sodomy, forcible sodomy or an attempt to commit any of the aforesaid shall run consecutively to the other sentences.

The Missouri Supreme Court found this statute to be ambiguous. Though it was clear from the statute that sentences for convictions of "rape, forcible rape, sodomy" or an attempt of one of these were required to be served consecutively to a sentence imposed for a conviction of a non-listed crime, it was not clear as to what a court should do if defendant was convicted of multiple *listed* offenses. *Williams v. State*, 800 S.W.2d 739, 740 (Mo. banc 1990). The court decided "the ambiguity must be resolved ... in favor of according the trial court maximum discretion." *Id.*

Additionally, in a recent case from this court, it was determined that, under *Williams*, a remand was necessary where a trial court sentenced the appellant to consecutive terms for each of two attempted rape convictions. *Parker v. State*, 836 S.W.2d 469 (Mo.App., E.D.1992). Although this court agreed the above sentences were "within the parameters of the statute," there was a suggestion from the record that the court may have believed the statute required him to award consecutive as opposed to concurrent sentences for the attempted rape convictions. 836 S.W.2d at 471. Thus, a remand was required to allow the trial court to assign the disputed sentences as either consecutive or concurrent, within the court's discretion. 836 So.2d at 471.

On the facts before us, appellant was sentenced to consecutive terms on each separate count. The trial court imposed sentence, stating "[t]he Court believes that under the current status of the law, ... these sentences must run consecutively to each other." Because of the recent statutory interpretations giving the court discretion in running such sentences consecutively or concurrently, this issue requires a remand. Although at least one of the sentences for sodomy must run consecutively to the sentences for the unlisted crimes, the court, in its discretion, may require that all sentences from each of the two categories run concurrently or consecutively to the other sentences in the respective categories.

■ Appellant's second point on appeal alleges trial court error in respect to the submission of Instruction Nos. 9 and 10 patterned after MAI–CR3d 320.22. These instructions were identical and were given in respect to the two counts of indecent exposure. Instruction No. 9 reads as follows:

### INSTRUCTION NO. 9

As to Count V, if you find and believe from the evidence beyond a reasonable doubt:

First, that on February 3rd or 4th, 1989, in the County of St. Charles, State of Missouri, the defendant exposed his genitals, and

Second, that defendant did so knowingly, and

Third, that defendant did so under circumstances in which he knew that such conduct was likely to cause affront or alarm,

then you will find the defendant guilty under Count V of indecent exposure.

However, unless you find and believe from the evidence beyond a reasonable doubt each and all of these propositions you must find the defendant not guilty of that offense.[2]

Paragraph First to MAI–CR3d 320.22 reads as follows:

2. Instruction No. 10 was identical in all relevant respects.

First, that (on) (on or about) (at about [time of day or night] on) (between the hours of [times of day or night] on) [date], in the (City) (County) of ___, State of Missouri, the defendant exposed his genitals, ...

Additionally, the "Notes on Use" accompanying MAI–CR3d 320.22 establish that "the instruction should submit the 'time of day or night' ... where the defendant has been charged with more than one instance of indecent exposure on the same day. If it is impossible to fix the occasion of the offense by time or date, the instruction should be modified to identify the occurrence by some other reference."

Appellant here alleges that because neither Instruction Nos. 9 nor 10 identified the occurrences of indecent exposure by any specific reference, the instructions failed to comply with the MAI–CR3d and, thus, constituted error.

■■ Appellant failed to object to the instructions at trial or in his motion for new trial, therefore, our review is limited to plain error. Rules 29.12 and 30.20; *State v. Hill*, 817 S.W.2d 609, 610 (Mo. App., E.D.1991). Instructional error will only rise to the level of plain error where the jury is so misdirected or the instruction so lacking as to cause "manifest injustice or a miscarriage of justice." *State v. Parkus*, 753 S.W.2d 881, 888 (Mo. banc 1988). Additionally, in determining whether plain error exists, the facts and circumstances of each case must be considered. *State v. Cline*, 808 S.W.2d 822, 824 (Mo. banc 1991).

Appellant, here, relies on *State v. Mitchell*, 704 S.W.2d 280 (Mo.App., S.D.1986), wherein verdict directing instructions for two counts of exhibiting a lethal weapon in an angry or threatening manner were identical and neither instruction indicated which incident was being referred to. The Southern District found this to constitute prejudicial error requiring reversal because the jury was unable to determine which evidence to consider in deciding appellant's guilt or innocence under each instruction. However, the *Mitchell* court was careful to distinguish its facts from the facts in *State v. Woodfin*, 559 S.W.2d 273 (Mo.App., St.

L.D.1977), a case more similar to the present situation. In *Woodfin*, appellant was charged with two counts of selling marijuana to two different individuals. The sales occurred on the same date, at the same place, with one sale immediately following the other. The verdict directing instructions offered by the State for each count were identical but for the count numbers referred to in the instructions. Neither instruction identified the individual to whom the sale was allegedly made. Appellant failed to object to the instructions at trial. Additionally, appellant was remiss in failing to allege error regarding the instructions in his motion for a new trial. Woodfin appealed his conviction and asserted the instructions constituted plain error. Although the court agreed it would have been better to identify the sale in each instruction through some method other than merely referring to the count, the court found that failing to do so did not rise to the level of plain error. *Id.* at 276.

The facts currently before us parallel the events in *Woodfin*. Here, appellant was charged with two counts of indecent exposure. Both of the acts occurred between the evening and morning of February 3rd and 4th and in the same location. Instruction Nos. 9 and 10 utilized by the trial court were identical but for the count numbers; the instructions did not identify the youths victimized by the acts of the indecent exposures. As in *Woodfin*, appellant here failed to object to the disputed instructions at trial and also failed to assign error in his motion for a new trial. Appellants in both cases requested review for plain error on appeal. As the present facts relate more closely to the facts in *Woodfin*, we are persuaded that a similar result is warranted. Though the State did err in failing to strictly adhere to the format of MAI–CR3d 320.22 and the accompanying "Notes on Use," we do not find such error to rise to the level of injustice necessary for a finding of plain error. Point denied.

■■ The third point on appeal contends the trial court erred by allowing the prosecutor to ask improper questions during voir

dire. Appellant alleges error regarding the following questions:

[w]ould anyone tend to disbelieve—disbelieve a child who delayed reporting an incident of sexual abuse ... is there any response to that? If so, you are all aware, then, that it is not unusual for a child or young person to wait some time before disclosing an incident of sexual abuse? Would anyone quarrel with that; that it's not unusual?

 Appellant asserts the use of this line of questioning improperly sought a commitment from the prospective jurors. It is well established in Missouri "that it is improper to question prospective jurors in a manner which causes them to speculate and commit themselves to a course of action based on certain contingencies which may subsequently occur or arise during trial." *State v. Tarkington*, 794 S.W.2d 297, 299 (Mo.App., E.D.1990). However, counsel may question the panel in an attempt to establish preconceived prejudices which would prohibit the jurors from following the instructions of the court. *State v. Crew*, 803 S.W.2d 669 (Mo.App., E.D. 1991). Additionally, the trial court has great discretion in controlling voir dire and this court will only interfere when the record indicates a "manifest" abuse of discretion and a substantial likelihood of injury to the appealing party. *Tarkington*, 794 S.W.2d at 299. Considering these principles as well as our holding in *State v. Lottmann*, 762 S.W.2d 539 (Mo.App., E.D. 1988), we find no prejudice or abuse of discretion.

*Lottmann* involved an appeal from a conviction of sexual abuse in the first degree wherein appellant claimed the trial court erred in permitting the prosecution to ask during voir dire whether "any member of the panel would tend to disbelieve a child 'in a case involving the sexual abuse or the sexual touching of a child by one who was held in a position of trust, a family member or a stepfather, someone in the family, ... simply because of a delay in the reporting that action by that child....' " *Id.* at 540. We held that such questioning was not an attempt to solicit a commitment by the prospective jurors. "Rather, the question explored the legitimate interest the State had in determining whether any prospective jurors harbored any prejudice against the witness ... because of her delay in reporting the incident of sexual abuse to her mother such that they would not fairly and impartially consider her testimony when offered." *Id.*

In the present case, the question asked by the prosecution was strikingly similar in form to the question allowed and upheld on appeal in *Lottmann*. We find that the questioning here was utilized merely to establish the existence of any preconceived prejudice of individual members of the panel as opposed to attempting to elicit a commitment from the prospective jurors. Finally, we find no manifest abuse of the discretion of the trial court in permitting the question to be asked over the objection of appellant. Point denied.

 Appellant's fourth point asserts trial court error in sustaining the State's objections to a particular line of questioning by the defense during voir dire. Defense counsel attempted to find out from prospective jurors whether they would be influenced by appellant's failure to take the stand in his own defense. The court sustained the prosecution's objection to this questioning due to the court's concern that defense counsel was asking for a commitment from prospective jurors. Additionally, the court noted the jurors would be given an instruction regarding the defendant's right to remain silent.

Appellant failed to include this claim in his motion for a new trial and, thus, requests that we review his claim for plain error pursuant to Rules 29.12 and 30.20.

 As stated above, this court will not interfere with a trial court's ruling on voir dire unless a review of the record indicates a manifest abuse of trial court discretion and substantial prejudice to the appellant. *Tarkington*, 794 S.W.2d at 299. Additionally, it must be noted that though reasonable latitude is allowed counsel in questioning prospective jurors, there are limits to the scope of this examination. *State v. White*, 722 S.W.2d 92, 94 (Mo.App., E.D.

1986). One such limit prevents counsel from divulging significant facts of the case during voir dire. *State v. Jenkins*, 741 S.W.2d 767, 770 (Mo.App., E.D.1987). Another prohibits counsel from explaining the court's instructions or instructing the jury as to the applicable law. *Robnett v. St. Louis University Hosp.*, 777 S.W.2d 953, 957 (Mo.App., E.D.1989). Thus, in a case with an issue similar to the one at hand, the State's objection to defense counsel's voir dire question regarding potential prejudice if defendant did not take the stand was sustained at trial and upheld on appeal. *State v. White*, 722 S.W.2d at 94. In affirming the trial court's decision, this court asserted that "[b]y stating what instructions the court may make, defense counsel attempted to inform the jury panel of the law applicable to the case and what instructions would be given and thus, the trial court properly sustained the state's objection." *Id.*

■ Here, as in *White*, defense counsel attempted to question panel members regarding conclusions they might draw if defendant did not testify in his own behalf. The court sustained the State's objection to the line of questioning indicating that the court would give instructions on this issue. As the case law above establishes, informing prospective jurors of one's right to remain silent is clearly outside the province of counsel. Therefore, the objection was properly sustained. Point denied.

■ The next issue on appeal alleges trial court error in submitting an instruction regarding deviate sexual assault in the first degree and omitting the definition of deviate sexual intercourse from the instruction as required by MAI–CR3d 320.10.2. Appellant requests plain error review due to the lack of objection to this instruction at trial and the failure of appellant to include it in his motion for new trial. Rules 29.12 and 30.20.

We first note that where there is an applicable MAI instruction, it must be used to the exclusion of any other instruction. Rule 28.02(c); *State v. Leisure*, 810 S.W.2d 560, 574 (Mo.App., E.D.1991). Additionally, the failure to give an instruction as

provided by the MAI and Notes on Use is error, the extent of which must be judicially determined. Rule 28.02(f); *State v. Stallings*, 812 S.W.2d 772, 778 (Mo.App., E.D.1991).

Instruction No. 6 utilized by the court reads as follows:

As to Count II, if you find and believe from the evidence beyond a reasonable doubt:

First, that during March or April, 1988, in the County of St. Charles, State of Missouri, the defendant touched the genitals of [T.W.] with his hand, and

Second, that such conduct constituted deviate sexual intercourse, and

Third, that [T.W.] was then fourteen years old, and

Fourth, that defendant was not then married to [T.W.],

then you will find the defendant guilty under Count II of deviate sexual assault in the first degree.

However, unless you find and believe from the evidence beyond a reasonable doubt each and all of these propositions, you must find the defendant not guilty of that offense.

However, MAI–CR3d 320.10.2 requires the inclusion of another paragraph which was not utilized in Instruction No. 6. This paragraph states:

As used in this instruction, the term "deviate sexual intercourse" means any act involving the genitals of one person and the mouth, tongue, hand, or anus of another person done for the purpose of arousing or gratifying the sexual desire of any person.

The failure to include this required paragraph defining "deviate sexual intercourse" constitutes error.

■ As previously noted, instructional error will only rise to the level of plain error where the jury was so misdirected or the instruction so lacking as to cause "manifest injustice or a miscarriage of justice." *State v. Parkus*, 753 S.W.2d at 888. We find no such injustice on the facts before us. Though Instruction No. 6 failed to include the definition of "deviate sexual

intercourse," as pointed out in respondent's brief, Instruction Nos. 7 and 8 did include that very definition. Where the facts show the appealing party could not have been prejudiced by the court's use of an erroneous instruction, there is no ground for reversal. *Lear v. Norfolk and Eastern Ry. Co.*, 815 S.W.2d 12, 15 (Mo.App., W.D. 1991). Here, where the evidence establishes that two instructions did contain the definition erroneously excluded from Instruction No. 6, and where the transcript additionally indicates the definition was read to the jurors by the court and during the prosecution's closing argument, we find no prejudice and thus, no grounds for reversal. Point denied.

■■■■ Appellant's final point on appeal alleges trial court error for overruling appellant's motion for judgment of acquittal at the close of all evidence on the two counts of indecent exposure. Appellant submits the State failed to prove its case on these points beyond a reasonable doubt. The State bears the burden of proving each element of the criminal charge. *State v. Todd*, 805 S.W.2d 204, 205 (Mo.App., W.D. 1991). This court will affirm the jury verdict if it is found to be supported by the substantial weight of the evidence. *State v. Keeper*, 787 S.W.2d 887, 888 (Mo.App., E.D.1990). In deciding whether there is substantial evidence, we will accept as true all evidence and inferences which are favorable to the verdict, thus disregarding evidence and inferences to the contrary. *Id.* at 888–89.

With this in mind, a review of the evidence supporting the verdict leads us to conclude the State has carried its burden in proving appellant's guilt. The relevant facts as previously set out establish that between February 3rd and 4th, 1989, appellant was in the locker room of the YMCA with S.F. Appellant unzipped his pants, pulled down his underwear, and exposed his penis which was nearly erect. On the same evening, M.L. was in the locker room when he noticed appellant near a mirror with his pants unzipped and his penis exposed. Considering these facts in a light favorable to the decision of the jury, we find the verdict supported by the substantial weight of the evidence. Appellant's final point on appeal is denied.

Based on the foregoing, the decision of the trial court is affirmed in part and remanded in part.

SMITH and STEPHAN, JJ., concur.