**STATE of Missouri, Respondent,**

v.

**Mark E. GRAHAM, Appellant.**

**No. WD 46829.**

Missouri Court of Appeals,
Western District.

July 25, 1995.

Motion for Rehearing and/or Transfer to Supreme Court Denied Aug. 29, 1995.

Application to Transfer Denied
Oct. 24, 1995.

James R. Wyrsch, Kansas City, for appellant.

Philip M. Koppe, Asst. Atty. Gen., Kansas City, for respondent.

Before SPINDEN, P.J., and ULRICH and SMART, JJ.

SMART, Judge.

Mark Graham appeals from the trial court's judgment finding him guilty of three counts of sodomy, in violation of § 566.060, RSMo 1986. Defendant Graham was sentenced to twenty years imprisonment on each count, to be served consecutively, for a total of sixty years imprisonment. Defendant Graham also appeals from the denial of his Rule 29.15 motion.

Defendant Mark Graham was an adult leader for a youth group which was associated with a church in Clay County. The group members consisted of young boys. In August of 1991, the church operated an overnight summer camp for children. Adam, a teenage boy, and Nick, Adam's 10–year–old brother, attended the camp.[1] The boys had previously moved from Missouri out of state. The boys spent two nights with defendant at his apartment before camp began. They also spent the night with defendant for at least one night when camp ended. Several other young boys stayed at defendant's apartment with Adam and Nick on the same three nights.

Defendant and the young boys slept in the living room together. Some of the boys slept on couches. On all three of the nights in question, Nick slept on the floor and defendant slept on the floor. Nick wore underwear and pajamas to bed and slept in a sleeping bag. According to the prosecution evidence, Nick was awakened the first night when he became aware of someone's hand touching his penis. The hand was under Nick's pajamas and underwear and on his penis. The hand stayed on the boy's penis for ten to twenty minutes. During this time, Nick heard heavy breathing. Nick did not look, he said, because he was afraid. He

---

1. The surnames of all boys mentioned in the opinion are withheld to protect their privacy.

detected that the hand was a large hand—the hand of an adult. Nick concluded it was defendant who touched him, since defendant was lying next to him and the hand was large. The same scenario occurred the next night and also the night after camp had ended. Defendant drove Adam and Nick back home after camp ended.

Defendant was charged with violating the sodomy statute on three occasions as to Nick, and on one occasion as to another boy named Timothy. Following a trial, defendant was found guilty on July 14, 1992, of the three counts of sodomy involving Nick. The count involving Timothy was dismissed by the court on defendant's motion before the case was submitted. On December 24, 1992, defendant filed his Rule 29.15 motion. After an evidentiary hearing, defendant's motion was denied. He now appeals from the trial court's judgment and the motion court's judgment.

### Sufficiency of the Evidence

Defendant Graham first complains that the trial court erred in denying his motion for judgment of acquittal in that insufficient evidence existed to support the convictions of sodomy. He contends that the evidence was insufficient to support his sodomy convictions because (1) the evidence failed to support a finding that defendant committed the offenses for the purpose of sexual gratification; (2) the victim's identification of defendant as the perpetrator was not credible; and (3) the victim's testimony was so contradictory and conflicting as to require corroboration, which was not provided by the State.

In reviewing a sufficiency of the evidence claim, the evidence together with all reasonable inferences to be drawn therefrom is viewed in the light most favorable to the verdict. *State v. Feltrop,* 803 S.W.2d 1, 11 (Mo. banc 1991), *cert. denied,* 501 U.S. 1262, 111 S.Ct. 2918, 115 L.Ed.2d 1081 (1991). The reviewing court must determine whether there is sufficient evidence from which a reasonable juror might have found the defendant guilty beyond a reasonable doubt. *State v. Grim,* 854 S.W.2d 403, 405 (Mo. banc 1993), *cert. denied,* —— U.S. ——, 114 S.Ct. 562, 126 L.Ed.2d 462 (1993).

Nick testified that he remembered three nights around the time of the summer camp when he and others spent the night at defendant's apartment. He testified that those spending the night there were defendant, his brother Adam, and "another kid." He said that he was sleeping on the floor with Mark, while his brother and his "brother's friend" were sleeping on couches. On cross-examination, Nick said it was possible that the night before camp started that some other boys named C.J. and Daniel were also present at the apartment. He said it was possible that he stayed for five nights instead of three. Nick said that he never saw who touched him. He testified at one point in his testimony that he was not certain who touched him. On re-direct, he stated that there was no doubt in his mind that defendant was the one who touched him. Nick's brother, Adam, remembered staying at the apartment for three nights. He remembered C.J. and a boy named Josh being there in addition to Nick and to defendant. Adam believed that defendant slept next to Nick on the floor all three nights, although he said it was possible that Daniel slept between defendant and Nick the night before summer camp. Detective Barbara Baker testified concerning her investigative interview with Nick, in which Nick related his allegations about having been touched by Mr. Graham. The allegations which she testified he made to her corresponded very closely with the testimony given at trial by Nick.

Testimony was also presented by Timothy, another boy who the defendant was charged with molesting on another occasion. Timothy testified that he stayed at Mr. Graham's apartment several times in 1991. He testified that the second to the last time he was there, C.J. was also spending the night. He testified that he slept on the floor with Mark Graham, and that C.J. slept on the couch. He testified that C.J. went to sleep while defendant and he were watching a movie. He testified that when the movie was over they turned the lights out. Before he fell asleep, Defendant Graham touched him. He said that Defendant Graham put his hand on top of the blanket over his penis. He said that he thought Defendant Graham held his

hand there about 30 seconds. He stated that then Defendant Graham took his hand and reached over and placed his (Timothy's) hand on Defendant Graham's penis, again through the blankets. He said this also lasted for about 30 seconds until Mr. Graham let go and he pulled his hand away. He stated that he then rolled over to the other side away from Mr. Graham. He testified nothing else happened that evening. He testified that on December 5, 1991, which was "a month or more" after the incident, he went to the police and reported the incident. He testified that he was acquainted with Nick, but never talked to Nick about the incident. On cross-examination, Timothy was very unclear about the time frame of the incident. He stated that it could have been August of 1991. He stated that he did not know when it occurred. He stated that he was certain that it was Mark Graham touching him. He stated that he went back to Mark Graham's house one other time because he felt pressured into it because Mark Graham kept calling his house and asking him to go over there.

Timothy's mother testified that after Timothy had gone to the police, Mr. Graham called her at her work. He was upset. She testified that he asked if anything happened the night that Timothy had stayed there that was upsetting to Timothy. Timothy's mother told Mr. Graham she could not discuss it. Mr. Graham then offered an explanation to the effect that sometimes when Timothy spends the night, Timothy ends up rolling over on top of him, and his hands end up going over on top of Timothy in bed. He told her that he knew that Saturday morning Timothy had had to take Mr. Graham's arm off of him in order to get out of bed. She stated that when she informed him that Timothy was going to counseling, Mr. Graham offered to go to counseling with Timothy.

A witness presented by the defense, C.J., testified that he was present at Mark's apartment overnight before summer camp. He said that others who were present were Nick, Adam, Defendant Graham, and Daniel. He testified that according to his recollection, Defendant Graham slept on the floor next to Nick and that Daniel slept on the other side

of Mark. Daniel testified that he spent the night there before summer camp also. He remembered those present as including C.J., Nick, Adam and Defendant Graham. He stated that Nick has been a friend of his for a long time. His recollection of the location of the parties as they slept was that defendant was next to the wall, then Daniel was next to him, and then Nick was next to Daniel. He stated that he remembered being between Mark Graham and Nick.

 Defendant first asserts that the evidence was insufficient to show that he committed the acts charged for the purpose of sexual gratification. Section 566.060.3, RSMo 1986 provides: "A person commits the crime of sodomy if he has deviate sexual intercourse with another person to whom he is not married who is less than fourteen years old." The phrase "deviate sexual intercourse" implies an intent to arouse or gratify sexual desire, and does not contemplate an innocent touching. *State v. Fields*, 739 S.W.2d 700, 704 (Mo. banc 1987). Thus, the State must prove that defendant committed the acts with the intent to arouse or gratify sexual desire.

Viewing the evidence in the light most favorable to the verdict, the evidence supports a jury finding that on three different nights defendant placed his hand inside Nick's pajamas and underwear and grasped the boy's bare penis for a period of between 10 and 20 minutes. During each incident, according to Nick, he heard fast and heavy breathing. This testimony is inconsistent with an accidental or innocent touching. Also, Timothy's testimony was entirely inconsistent with an accidental touching on the occasion he was allegedly touched. The jury could have reasonably inferred from Nick's and Timothy's testimony that defendant touched Nick "to arouse or gratify sexual desire."

 Next, defendant contends that Nick's identification testimony was not credible. Although Nick kept his eyes closed during the touchings, he stated he was able to identify defendant because he could tell that the person grasping his penis was the person lying next to him, who, Nick testified, was defendant; and because the person touching

him had large, adult-size hands. Defendant was the only adult present on the nights in question. After one of the occasions, Nick said he saw defendant get up from beside him after the touching occurred, and get a drink of water. The evidence presented was sufficient for the jury to find defendant guilty of violating § 566.060 on three occasions.

■■■ Defendant argues that the State was required to present testimony corroborating Nick's version because the victim's testimony was contradictory. Generally, the testimony of a single witness is sufficient to support a criminal conviction. *State v. Marlow*, 888 S.W.2d 417, 421 (Mo.App.1994). In cases involving sexual offenses, the victim's testimony alone will sustain a conviction even if uncorroborated. *Id.* An exception to this rule exists if the victim's trial testimony is so contradictory and in conflict with the physical facts, surrounding circumstances and common experience that its validity is rendered doubtful. *State v. Silvey*, 894 S.W.2d 662, 673 (Mo. banc 1995) (even though young victim's answers on cross-examination differed from answers on direct examination, her testimony did not conflict with physical facts, surrounding circumstances, and common experience). In cases where the testimony is extremely self-contradictory or in conflict with the physical facts, corroboration of the victim's testimony is required to sustain the conviction. *Marlow*, 888 S.W.2d at 421. The "corroboration rule" is triggered only by contradictions in the victim's trial testimony, and not by inconsistencies with his out-of-court statements or the testimony of other witnesses. *Id.* The discrepancies must amount to "gross inconsistencies and contradictions" and must relate directly to an essential element of the case. *Id.* at 422. To invoke the corroboration rule, the victim's trial testimony must be so contradictory and so conflicting as to be "inherently incredible, self-destructive, or opposed to known physical facts." *State v. Dupepe*, 241 S.W.2d 4, 7 (Mo.1951); *see also State v. Harris*, 620 S.W.2d 349, 353 (Mo. banc 1981).

Defendant claims that the victim's testimony was so contradictory and conflicting as to require corroboration. We disagree. Defendant's argument focuses primarily on how

Nick's testimony conflicted with the testimony of other witnesses. As stated above, the corroboration rule is triggered only when there are contradictions in the victim's testimony, not when there are contradictions between the victim's testimony and another witness's testimony. Defendant fails to point out any "gross inconsistencies and contradictions" bearing directly on an essential issue in the case. The only significant apparent self-contradictions we observed in Nick's testimony were as follows:

Q. Is it possible that someone else [other than Mr. Graham] could have touched you. Yes or no?

A. No.

Q. It is not possible?

A. No.

Q. You're not certain who touched you, are you, Nicholas?

A. No.

\*　　\*　　\*　　\*　　\*　　\*

Q. Nicholas, is there any doubt in your mind that Mark Graham was the one who touched you?

A. I don't understand.

Q. The three times you stayed at Mark Graham's apartment, is there any doubt that Mark Graham was the one who touched you?

A. No.

■■■ He said at one point he was not certain who touched him, and at other times he indicated he had no doubt that defendant was the one who touched him. The witness was eleven years old at the time of his testimony, and considering that he was adamant that the defendant touched him except for the single response mentioned above, we conclude that semantical confusion played a part in the apparent contradiction mentioned above. Otherwise, Nick's testimony was coherent and self-consistent. Defendant argues that Nick's testimony as to how he was touched seems to conflict with his testimony that he slept in a sleeping bag and the zipper was zipped up. Defendant is correct in noting that such testimony may be something for the defense to argue as somewhat implausible. However, we cannot say that such

testimony is inherently conflicting or implausible. Certainly, it is not impossible to reach into a sleeping bag practically the full length of the arm. Nick was never asked to describe exactly how the reach was accomplished. Nick's testimony was not so self-contradictory as to trigger the necessity for corroboration to amount to a submissible case. *Silvey,* 894 S.W.2d at 673. We conclude that the appraisal of Nick's testimony was for the jury. *See State v. Newberry,* 605 S.W.2d 117, 121 (Mo.1980). Sufficient evidence existed to support the convictions. Point I is denied.

### *Jury Instructions*

Defendant asserts that the trial court erred in submitting jury instructions 7, 8 and 9 because the instructions deviated from the required instruction, MAI–CR3D 320.080.2 by failing to define the phrase "deviate sexual intercourse."

Instructions 7, 8 and 9 are essentially the same except for the count numbers and dates contained in each. The instructions read:

As to Count (I, II, III) if you find and believe from the evidence beyond a reasonable doubt:

First, that on or about August (3, 4, 7), 1991, in the County of Clay, State of Missouri, the defendant placed his hand on the penis of N.S. and

Second, that such conduct constituted deviant sexual intercourse, and

Third, that N.S. was then less than 14 years old,

then you will find Defendant guilty under Count (I, II, III) of sodomy.

However, unless you find and believe from the evidence beyond a reasonable doubt each and all of these propositions, you must find the Defendant not guilty of that offense.

If you do find the Defendant guilty under Count (I, II, III) of sodomy, you will assess and declare one of the following punishments:

(1) life imprisonment;

(2) imprisonment for a term fixed by you but not less than five years.

MAI–CR3d 320.080.2 contains the verdict directing instruction for the crime of sodomy. This Missouri Approved Instruction requires the inclusion of the definition of the phrase "deviate sexual intercourse." This definition was omitted from Instructions 7, 8, and 9. The purpose of Instruction 6, the instruction immediately preceding these three instructions, was to provide the definition of "deviate sexual intercourse," which read:

As used in these instructions, the term "deviate sexual intercourse" means any act involving the genitals of one person and the mouth, tongue, hand or anus of another person done for the purpose of arousing or gratifying the sexual desire of any person.

Rule 28.02 provides that a Missouri Approved Instruction must be given whenever possible to the exclusion of any other instruction. Therefore, if an approved instruction exists for a certain offense, that instruction must be used. *State v. Cook,* 727 S.W.2d 413 (Mo.App.1987). MAI–CR 3d 333.00 Note on Use Number 5 states that if, "a term is used in only one instruction, the definition of that term may be added at the bottom of that instruction, or may be submitted to the jury as a separate instruction." The note does not say that if the term is used in several instructions, the term may be defined in a separate instruction. In this case, the definition was given in a separate instruction, and there was no specific cross referencing, but only the phrase "as used in these instructions." Rule 28.02 provides that the giving of an instruction contrary to the rule shall constitute error, "its prejudicial effect to be judicially determined." It appears that, technically, the giving of instructions 7, 8 and 9 without the definition included in each instruction constituted error. We now must determine the effect of the error. All of the instructions and evidence must be considered together in determining whether an instructional error is prejudicial or merely harmless. *State v. Ward,* 745 S.W.2d 666, 670 (Mo. banc 1988).

The facts in *State v. Newman,* 839 S.W.2d 314, 321 (Mo.App.1992) are analogous to the case presented here. In *Newman,* defendant was convicted of three counts of sodomy, one

count of deviate sexual assault in the first degree, and two counts of indecent exposure. 839 S.W.2d at 316. One of the verdict directing instructions for one of the sodomy charges failed to include the definition of "deviate sexual intercourse." However, two other instructions contained the definition. The court held that the omission of the definition was not prejudicial since two other instructions contained the definition of "deviate sexual intercourse," and because both of these instructions were read aloud to the jury by both the trial court and the prosecutor. The court stated: "Where the facts show the appealing party could not have been prejudiced by the court's use of an erroneous instruction, there is no ground for reversal." *Id.* at 322. The logic employed in *Newman* applies here. In the instant case, the definition of "deviate sexual intercourse" was contained in the separate definitional instruction immediately preceding the verdict directors. The definition in that instruction was preceded by the phrase "as used in these instructions ...," indicating that the definition would apply to the phrase in each instance. The definition was read aloud to the jury by both the trial court and the prosecutor. The facts presented here show that defendant could not have been prejudiced by the use of the erroneous instruction. Based on the foregoing, we conclude that the error was harmless. Point II is denied.

### Good Character Evidence

Defendant claims that the trial court erred in failing to permit defendant to present evidence of good reputation as to traits of character inherent in the crimes charged. Defendant asserts that he was denied his rights to due process and a fair trial as guaranteed by the fifth, sixth, and fourteenth amendments to the United States Constitution, and Article I, §§ 10 and 11 of the Missouri Constitution.

Defense counsel called a witness named Deborah Rowe to testify on behalf of defendant. At that time, Ms. Rowe was a teacher in an elementary school. Ms. Rowe knew Mark Graham because they both attended the same church. After eliciting some general information from Ms. Rowe, defense coun-

sel asked Ms. Rowe what activities she had observed defendant participate in at church. The prosecutor objected to the question based on relevancy. The trial court sustained the objection. Defense counsel then requested to approach the bench and she proceeded to make the following offer of proof:

This witness has long term knowledge of Mark's involvement with the church and the children, which would establish his character, his integrity with children, which is the crux of this entire case, and I'd like an opportunity for the jury to hear how this man interacts with the children at the church.

The prosecutor again stated that the testimony was irrelevant and the trial court sustained the prosecutor's objection and the witness was excused.

■■■■ A defendant is generally entitled to present evidence of his reputation concerning those traits of character which ordinarily would be involved in the commission of the charged offense. *State v. Bolen,* 731 S.W.2d 453, 461 (Mo.App.1987). However, evidence concerning defendant's character may be shown only by testimony as to his reputation, not by evidence of specific acts or conduct. *State v. Brown,* 718 S.W.2d 493, 494 (Mo. banc 1986). Defense counsel's offer of proof failed to demonstrate that counsel intended to show reputation as opposed to specific acts. Thus, we cannot convict the trial court of error in prohibiting this evidence. Point III is denied.

### Closing Argument

Defendant Graham claims that the trial court erred in denying defendant's motion for a new trial because the prosecutor, in closing argument, commented on defendant's right to remain silent. Defendant claims that the prosecutor's comments resulted in a violation of defendant's fifth and fourteenth amendment rights under the United States Constitution, and Article I, §§ 10 and 11 of the Missouri Constitution.

During closing argument, defense counsel made the following comments:

My client, Mark Graham, did not testify and the Judge has instructed you that it is Mark's right not to testify and that you are not to presume guilt or draw any inference of any kind regarding the fact that Mark did not testify. Quite frankly, was it necessary for Mark to testify when the prosecutor clearly failed to meet his burden of proof? There is much reasonable doubt because of the conflicting testimony you have heard, and, most importantly, because of the lack of any positive identification that Mark Graham was the one who touched these boys' penises.

After defense counsel had concluded her closing argument, the prosecutor approached the bench and told the trial court that he believed he was entitled to comment during rebuttal about the failure of defendant to testify because defense counsel had "opened the door" to the subject by her comments. The trial court agreed with the prosecutor that defense counsel had opened the door and allowed the prosecutor to respond to defense counsel's argument. Defense counsel made no objection to the trial court's ruling. During the prosecutor's rebuttal, he stated:

> Whether Mark Graham needed to testify or not is your decision, but the prosecution, in fact, made the essential elements of the case of sodomy. Whether he chose to testify because the State didn't prove those elements, that's not the case at all. That is not the case at all.

Shortly thereafter in the rebuttal, the prosecutor also stated:

> The State is asking that you consider the maximum, send a message out that, in Clay County, when you abuse that trust, when you take the liberties and take the innocence of a little kid, expect to be treated harshly with a severe sentence. Nicholas came forward and had the courage to testify. Tim came forward and had the courage to testify. Remember the evidence as you recall it, the State is convinced you will return a verdict of guilty on all three counts.

■■■ The issues related to the argument were not properly preserved for review because no objection was made during the prosecutor's subsequent comments. Defendant did raise the allegation of error in his motion for new trial. Plain error review is available where the court determines that such references deprive the accused of the right to a fair trial to such an extent that it can be considered a manifest injustice. Rules 29.12(b); 30.20; *see also City of Cape Girardeau v. Jones,* 725 S.W.2d 904, 908 (Mo.App.1987).

■■■ The trial court has wide discretion in controlling closing argument and an appellate court will disturb the trial court's decision only where the references made by the prosecutor as to the defendant's failure to testify are direct and certain. *State v. Ramsey,* 820 S.W.2d 663, 667 (Mo.App.1991). A direct reference to defendant's failure to testify is made when the prosecutor uses words like "defendant," "accused" and "testify" or the equivalent. *State v. Lawhorn,* 762 S.W.2d 820, 826 (Mo. banc 1988). An indirect reference is one which is not direct, but still is reasonably likely to call the jury's attention to an accused's failure to testify. *Id.* A direct reference will almost invariably require reversal of the conviction, whereas an indirect reference is improper only if there is "a calculated intent" demonstrated by the prosecutor "to magnify" the decision of the defendant not to testify. *Id.*

■■■ Indirect references may occur as a result of legitimate arguments by the prosecution which relate only tangentially to the defendant's decision not to testify. For instance, it is legitimate for the prosecution to refer generally to the lack of defense evidence which contradicts the prosecution witnesses, *State v. Morgan,* 444 S.W.2d 490 (Mo.1969). Also, the prosecution may make a reference—either direct or indirect—to the defendant's failure to testify if the prosecutor is fairly responding to an argument of the defendant by adverting to the defendant's silence. *United States v. Robinson,* 485 U.S. 25, 108 S.Ct. 864, 99 L.Ed.2d 23 (1988) (prosecutor was responding to closing argument of defense counsel that the defendant had never had "an opportunity to explain" his actions); *Smith v. Fairman,* 862 F.2d 630 (7th Cir. 1988) (where *prosecutor* was responding to

defense counsel suggestion that defendant had a "condition" which kept him from being able to testify).

■ Article I, § 19 of the Missouri Constitution and the fifth amendment to the Constitution of the United States both provide that a person shall not be compelled to testify against himself in a criminal trial. It is well established that implicit in this right is the right to be protected from having an adverse inference argued by the prosecution. *Griffin v. California,* 380 U.S. 609, 85 S.Ct. 1229, 14 L.Ed.2d 106 (1965); *State v. Roth,* 549 S.W.2d 652 (Mo.App.1977). Also, § 546.270, RSMo 1986 provides that if the accused does not testify, such fact shall not "be construed to affect the innocence or guilt of the accused, nor shall the same raise any presumption of guilt, nor be referred to by any attorney in the case, nor be considered by the court or jury before whom the trial takes place." The Missouri courts have treated with severity unauthorized references to defendant's choice to remain silent. *E.g., State v. Stuart,* 456 S.W.2d 19, 22 (Mo. banc 1970) (witness's testimony that defendant did not speak up to claim certain coins as his own required new trial, although no objection was made and review was by plain error); *State v. McNeal,* 517 S.W.2d 187, 188 (Mo.App.1974) (prosecutor in closing argument referred to jury instruction precluding inference from failure to testify and added, "that is to say, that the defendant himself elected not to testify;" court held mistrial should have been declared).

■ We first consider the prosecutor's reference as to the courage of Nick and Tim for coming forward and testifying. This reference, argues defendant, was an indirect reference to defendant's failure to testify by its implication that defendant did not have the courage to testify in his own defense because his position at trial was not truthful. However, taking it in context, it is unlikely any juror would have seen it as a comment on whether defendant testified. This remark may be regarded as simply referring to the fact that it takes courage for a young person to take the stand in a case such as this. Thus, it was an attempt to support the credibility of the prosecution witnesses. We have

no reason to conclude that the prosecutor was guilty of a calculated intent to magnify defendant's decision not to testify. If the jurors compared the courage of the young men to defendant's failure to take the stand, it would have been incidental to the comments of the prosecution, especially in view of the fact that the defense first mentioned defendant's failure to testify. Even if the prosecutor had in mind an indirect allusion to defendant's decision not to testify, the fact that the defense first brought up defendant's failure to testify because it was not "necessary," we could not hold this to be impermissible argument. Consequently, we find no violation of defendant's rights resulting from these remarks.

■ Next, we consider the prosecutor's direct reference to defendant's failure to testify when he stated, "Whether Mark Graham needed to testify or not is *your* decision...." (emphasis added). This assertion may be interpreted different ways. However, in view of the fact that the defense had argued that it was not "necessary" for Mr. Graham to testify, it is reasonable to interpret this remark as a rebuttal—an argument that it was indeed "necessary" for Graham to testify because a conviction was otherwise certain to result. While such an argument would be clearly impermissible in the usual case, the fact that the defense initially surfaced the issue alters the analysis. We hold that this argument, in context, was fair rebuttal and did not violate defendant's rights.

■ The defense next complains as to the prosecutor's further remark, "Whether he chose [not] to testify because the State didn't prove those elements, that's not the case at all. That is not the case at all." We understand this argument as a vague comment on the reason defendant did not testify. The indirect inference, of course, could be that his real reason for not testifying is that he is guilty. The prosecution could reasonably have interpreted the defense argument as addressing the reason that defendant did not testify; the prosecution was purporting to rebut the defense argument as to defendant's reason for not testifying. Technically, taking a very narrow view of the defense

argument, the defense did not explicitly address the issue of *why* defendant did not testify. However, taking a realistic view of defendant's argument as it would have been understood by the jury, we must recognize that the jury would have understood the defense to be making a connection between defendant's decision and the alleged weakness of the prosecution case. The fact that the weakness of the prosecution case and the defendant's choice not to testify are mentioned close together suggests that *the reason* defendant did not testify was because the prosecution case was weak. Therefore, the prosecution's challenge to defendant's choice not to testify *"because* the state didn't prove those elements" cannot be said to have been unfair rebuttal to defendant's arguments, especially when no objection was made. Moreover, the prosecution's rather cryptic rebuttal that "that's not the case at all," is vague and may not have been understood. We cannot say that the trial court had a duty, *sua sponte,* to make sure that the prosecution was taking a strained and narrow view of the defense comments in its rebuttal. Under the circumstances, we discern no error.

The general thrust of the defense argument is similar to that in *Babb v. United States,* 351 F.2d 863 (8th Cir.1965), where the defense counsel told the jury it was counsel's decision, not defendant's, that defendant not testify, and further told the jury that "I have gone on the theory that they have utterly failed to prove the allegations of this indictment." The court there found that the prosecutor's mention of defendant's choice not to testify did not require reversal. *Id.* In this case, the defense, after opening the door on whether it was "necessary" for defendant to testify, cannot argue that the trial court had a duty to keep the prosecution from briefly touching on defendant's failure to testify in rebuttal to the defense argument. Accordingly, we hold the trial court did not err. Point IV is denied.

**2.** The factors considered by the sentencing court, including a pre-sentence investigation, have not been included in the record on appeal. We gather that the pre-sentence report did not recommend probation because defendant continued in denial of guilt, and therefore would not be considered a good risk to succeed in counseling.

*Sentencing*

Defendant Graham asserts that the trial court erred in assessing punishment of three twenty year terms to be served consecutively because such sentence constitutes cruel and unusual punishment prohibited by the eighth and fourteenth amendments to the United States Constitution and Article I, § 21 of the Missouri Constitution.

■ Section 566.060.2, RSMo 1986 provides that the punishment for the offense of sodomy ranges from five years to life imprisonment. The jury in this case recommended 20 years as to each count. The consecutive sentences imposed here, while having a cumulative effect which seems harsh under the circumstances,[2] are within the range of punishment prescribed by the statute. The cumulative effect, according to *State v. Repp,* 603 S.W.2d 569 (Mo. banc 1980) does not constitute cruel and unusual punishment.

A punishment within statutory limits cannot as a matter of law be held cruel and unusual when the statute authorizing the punishment is not invalid; when punishment imposed is within the range prescribed by statute, it cannot be judged excessive by the appellate court; and where defendant is convicted of separate offenses and the sentences imposed are within statutory limits, consecutive effect of the sentences does not constitute cruel and unusual punishment.

*Id.* at 571 (citations omitted). Defendant does not challenge the validity of the statute setting out the limits of punishment. Defendant also does not contend that the trial court did not have discretion to run the sentences consecutively. Thus, the sentence imposed by the trial court does not constitute cruel and unusual punishment. *State v. Lachterman,* 812 S.W.2d 759, 771 (Mo.App. 1991), *cert. denied,* 503 U.S. 983, 112 S.Ct. 1666, 118 L.Ed.2d 387 (1992) (in sodomy case involving two consecutive 30 year sentences,

Defendant had no prior criminal offenses. A few cases in other jurisdictions have found cruel and unusual punishment in such circumstances. *E.g., Faulkner v. State,* 445 P.2d 815 (Alaska 1968). *See also State v. Repp,* 603 S.W.2d 569 (Mo. banc 1980) (Bardgett, J., dissenting).

court rejected claim of cruel and unusual punishment as a matter for legislative rather than judicial determination where sentence was within range prescribed by legislature). Point VII is denied.

### Ineffective Assistance of Counsel

Defendant also contends that he did not receive effective assistance of counsel as required under the sixth and fourteenth amendments to the United States Constitution and Article I, § 10 and 11 of the Missouri Constitution, and that he is therefore entitled to vacation of the judgment of convictions and the sentences.

Defendant in this case was represented by retained counsel (not the attorneys representing him on this appeal). Ineffective assistance of counsel is not so much about a particular tactical failure or two by counsel; rather, it is about a performance by counsel which falls so far short of that necessary to provide a fair trial that the court feels compelled to order a new trial. The benchmark for judging ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied upon as having produced a just result. *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). Judicial scrutiny of counsel's performance must be highly deferential. It is "all too tempting" for a defendant to challenge counsel's assistance after conviction, and it is "all too easy" for a court to conclude that a particular act or omission of counsel was unreasonable. *Id.* Thus, a court deciding an effectiveness claim must judge the reasonableness of counsel's conduct on the facts of the particular case, viewed as of the time of counsel's conduct. The court must then determine whether, in light of all the circumstances, the identified acts or omissions were outside the "wide range" of professionally competent assistance. *Id.* at 690, 104 S.Ct. at 2066. Counsel is strongly presumed to have rendered adequate assistance and made all decisions in the exercise of reasonable professional judgment. *Id.* Moreover, even when counsel's performance has been shown to be professionally unreasonable, the motion court must ask if defen-

dant has shown a reasonable likelihood that the decision reached would have been different absent the deficiencies of counsel's performance. *Id.* at 696, 104 S.Ct. at 2069.

In this case, defendant focuses his appeal of the ineffective assistance claim in two areas. First, he contends that trial counsel was ineffective in commenting during closing argument on defendant's failure to testify and in failing to object to the prosecutor's rebuttal comments on his failure to testify. Defendant also contends counsel was ineffective in failing to fully advise defendant as to his right to testify at trial, and failed to properly prepare defendant to testify at trial, thereby causing him to decline to testify without being fully informed.

To demonstrate prejudice, a movant must establish a reasonable probability that, but for counsel's errors, the outcome of the trial would have been different. *Leisure v. State,* 828 S.W.2d 872, 874 (Mo. banc 1992), *cert. denied,* —— U.S. ——, 113 S.Ct. 343, 121 L.Ed.2d 259 (1992). When the issue is ineffectiveness as to sentencing only, not as to conviction, defendant must show that his sentence would have been "significantly less harsh" without the actions of counsel. *Spriggs v. Collins,* 993 F.2d 85 (5th Cir.1993).

We turn to the specific allegations concerning defense counsel's unfortunate strategy in closing argument. At closing, trial defense counsel stated as follows:

> My client, Mark Graham, did not testify and the judge has instructed you that it is Mark's right not to testify and that you are not to presume guilt or draw any inference of any kind regarding the fact that Mark did not testify. Quite frankly, was it necessary for Mark to testify when the prosecutor clearly failed to meet his burden of proof? There is much reasonable doubt because of the conflicting testimony you have heard and most importantly because of the lack of any positive identification that Mark Graham was the one who touched these boys' penises.

The motion court concluded that these comments, in context, were a comment "on the burden of proof." The court concluded that counsel's actions did not fall outside

the wide range of reasonably professional assistance, and in any event defendant did not show any prejudice. Our review of the postconviction motion is limited to determining whether the motion court's findings of fact and conclusions of law are clearly erroneous. *State v. Nolan,* 872 S.W.2d 99, 104 (Mo. banc 1994). The findings and conclusions are to be deemed clearly erroneous only if, after a review of the entire record, the court is left with the definite and firm impression that a mistake has been made. *Id.*

▪ We disagree that trial defense counsel's comments were directed only to the "burden of proof." We believe, as noted above, that defense counsel chose to imply that defendant did not testify because the prosecution's case was weak, and, therefore, he did not need to testify. Do we conclude that the motion court was "clearly erroneous" in finding that the conduct of counsel was within the wide range of reasonably professional assistance? We do not, although we agree that counsel's strategy in this regard was questionable, and revealed, we believe, counsel's inexperience. Are we firmly convinced that the trial court clearly erred in concluding that defendant had not shown a reasonable probability that, but for counsel's error, the outcome of the trial would have been different? No. We cannot say that defendant has demonstrated that prejudice occurred as a result of this particular incident. In our view, the critical aspect of the case was the testimony of Timothy. If Timothy had not testified, defendant would have had a much better chance of acquittal. The only thing weak about Timothy's testimony was his inability to remember when the event he described happened. In every other respect, Timothy was a strong witness. Moreover, the record shows that the prosecution, in responding to defense arguments that defendant did not need to testify because the state's case was weak, did not greatly magnify defendant's decision not to testify, and exercised considerable restraint as to any implication of guilt from defendant's lack of testimony. We are to consider the findings and conclusions of the motion court in light of the entire record. *Nolan,* 872 S.W.2d at 104.

## Failure to Fully Advise About Decision Whether to Testify

The motion court also found no basis for relief concerning counsel's alleged failure to fully advise defendant concerning testifying and failing to prepare defendant to testify. The motion court found that the defendant made the decision not to testify, and that he expressed no need to discuss his decision further with counsel at that time. What is lacking in the trial court's findings, however, is a finding as to the reasonable competency of counsel's advice to defendant concerning the decision whether to testify. Rule 29.15(i) requires that the motion court issue findings of fact and conclusions of law on all issues presented. We know that counsel recommended that defendant not testify, that the defendant made the decision not to testify, and that defendant was content with that decision at the time it was made and did not indicate he had any further questions about it. While ordinarily we may need nothing more, in this case, where defendant contends that he was not competently advised concerning the issue of whether to testify, it is significant that counsel testified at the postconviction hearing that one of her considerations related to potential rebuttal evidence.

> Q. And one of the things you mentioned [in an interview with post-conviction counsel] was that we asked you about the reasons why Mr. Graham didn't testify.
>
> A. Correct.
>
> Q. And you told us, as I recall, that you became aware of the potential of what I would describe as rebuttal evidence that might be put on by the State if Mr. Graham would testify?
>
> A. That was a consideration, yes.

Trial counsel testified that she understood that there was potential rebuttal evidence that Mr. Graham had, on other occasions touched children in what counsel described as "inappropriate ways," such as running his fingers through their hair, rubbing their feet, giving massages, and so on. The incidents did not involve allegations of sexual touching. Counsel said she became aware the day of

trial that the children had been subpoenaed and were present in the courthouse. When asked if she had checked into the admissibility of such testimony, she said she had "checked into it and considered that evidence." She did not file a motion for any kind of preliminary ruling on the admissibility of the testimony.

Q. Okay. Did you seek in any fashion a ruling from Judge Hutcherson as to whether or not this testimony would be admissible prior to the time you made the decision and prior to the time Mr. Graham made the decision whether or not to testify?

A. No, because this whole issue was just one of many factors for Mr. Graham to consider.

Q. So the—the issue of this admissibility, pro or con, was not ever decided upon in this trial. Is that a fair statement?

A. As far as me approaching the Court with any motions, that is correct.

\* \* \* \* \* \*

Q. So would it be fair to say that since there was no ruling, Mr. Graham did not have the benefit of that information determining whether or not he was going to testify?

A. He said there was a possibility that that evidence could come out.

Q. But it had not been addressed in any fashion with the Court in terms of its admissibility?

A. No, it was not.

▪▪▪▪ The motion court in this case made no finding as to whether Mr. Graham was adequately advised concerning the relevant aspects of testifying. Defendant Graham testified that counsel told him he did not need to testify because there was already reasonable doubt, and that it "might open up areas that she didn't want to get into." Whether or not the defendant should testify is a matter of strategy. However, the competency of counsel's advice is not thereby automatically immunized from review. The

defendant made the decision, but the defendant was entitled to reasonably competent advice in making the decision. *State v. Ervin,* 835 S.W.2d 905, 930 (Mo. banc 1992), *cert. denied,* —— U.S. ——, 113 S.Ct. 1368, 122 L.Ed.2d 746 (1993); *State v. Hamilton,* 871 S.W.2d 31 (Mo.App.1993). We could remand for specific findings concerning the adequacy of this advice. However, even if we were to assume that counsel's advice was inadequate and not reasonably competent, we still could grant relief to defendant only if the entire record reveals that defendant was prejudiced. In this connection, the court is entitled to consider the strength of the evidence of guilt in evaluating any prejudice. In this regard, we have already noted the significance of the testimony of Timothy. Given the fact that Timothy testified, the inquiry is as to the likely value of defendant's testimony if defendant had in fact testified. We cannot automatically assume that, had defendant testified, it would have significantly helped him. It appears to us from the record that defendant and his counsel, even apart from the issue of the admissibility of the so-called rebuttal testimony, were both somewhat uneasy about allowing him to be subjected to cross-examination. Mr. Graham has made no showing that, if he had testified, he would have been able to offer an explanation as to why Nick and Timothy both brought accusations against him, if the accusations are false. Presumably, it would take a great deal of nerve for a young teen and a pre-teen to follow through, in court, under oath, with false accusations which can send an accused to prison for a long time. Consequently, the jury would have been looking for a motive—revenge, hatred or something else powerful—which would have given the boys the boldness to collaborate in false accusations against Mr. Graham. If Mr. Graham cannot then or now offer a theory as to why *both* young teens brought these serious accusations, a jury is likely to believe the alleged victims. While we have some questions about certain aspects of the defense in this case,[3] we conclude that, in view of the critical

---

**3.** The transcript reveals that counsel would have handled the cross-examination of Nick's mother differently if the witness had been interviewed or deposed before trial. Counsel's strategy was to

try to show inconsistencies and improbabilities in the testimony of the prosecution witnesses. We do not know whether counsel made proper use of the depositions of the alleged victims. In

nature of the additional accusations brought by Timothy, and in view of the fact that defendant offers us no reason to believe his testimony would have offered any explanation to the jury, defendant has not demonstrated a reasonable probability that, but for counsel's inadequacies, the outcome of the trial would have been different. The burden remains on the defendant to convince us that the findings and conclusions of the motion court are clearly erroneous. *Amrine v. State,* 785 S.W.2d 531, 534 (Mo. banc 1990), *cert. denied,* 498 U.S. 881, 111 S.Ct. 227, 112 L.Ed.2d 181 (1990). It is not our duty to engage in *de novo* review of deficiencies in counsel's performance. Our job is to review the findings and conclusions of the motion court. The trial court found that defendant has not made a sufficient showing of prejudice from counsel's alleged failures. We cannot say this finding was clearly erroneous.

### Conclusion

Defendant's points challenging the judgment of conviction are denied, and the judgment of conviction of three counts of sodomy is affirmed. The judgment of the trial court denying defendant's post-conviction motion under Rule 29.15 is affirmed.

All concur.

cross-examining Nick, counsel several times referred generally to what may have been said by Nick at his deposition, but when Nick denied remembering giving contrary testimony, counsel did not use the deposition itself to show whether he had given contrary testimony. Counsel moved before trial to dismiss the charge involving Timothy, but based upon the prosecutor's representation that he would prove that there was skin-on-skin contact with Timothy, the motion was denied. We are not sure why counsel was unable to use the deposition of Timothy to show that no such testimony would be forthcoming.